Wullenwaber v. Dunigan.

---

NICHOLAS WULLENWABER ET AL., APPELLES, V. MICHAEL DUNIGAN ET AL., APPELLANTS.

[FILED NOVEMBER 25, 1891.]

1. See syllabus of the original opinion.

2. Res Gestæ: FALSE REPRESENTATIONS: SIGNERS TO PETITION FOR RAILROAD BOND: ELECTION INDUCED BY. Where, in the course of the canvassing and electioneering to induce a sufficient number of freeholders of a certain town to become signers of a petition to the county board for an election for the issuance of bonds to be donated to a railroad company, certain representations, promises, and inducements were falsely and fraudulently made and held out by the railroad company to such freeholders, and which resulted in such freeholders becoming signers to said petition, held, that such representations, promises, and inducements, although made at a time and meeting previous to the time at which said freeholders became signers, were nevertheless a part of the *res gestæ*.

3. ———: ———: ———: AGENTS. Where two agents of a railroad
company were engaged in the common purpose of soliciting the
freeholders of a town to become signers to a petition for the call-
ing of an election to vote bonds, and one of said agents made
certain pledges and promises, and held out certain inducements
to said freeholders who shortly afterwards were by the other of
the said agents presented with said petition, and signed the
same, *held*, that such pledges, promises, and inducements were a
part of the *res gestæ*.

REHEARING of case reported 30 Neb., 877.

*George W. Post*, and *D. C. McKillip*, for appellants.

*Norval Bros. & Lowley, contra.*

COBB, CH. J.

This cause was brought to this court on appeal from the
district court of Seward county, was argued and submitted
at a former term, the judgment of the district court affirmed
and opinion filed, which is published in the 30th volume of
our reports, p. 877. At the last term a reargument was
granted upon the application of the defendant, the Fremont,
Elkhorn & Missouri Valley Railroad Company. The
cause was again argued and submitted at the present term.

The object of the action was to restrain and enjoin the
issuing and delivering of $10,000 of the bonds of "K"
town, in the county of Seward, claimed to have been voted
by said town, as a donation to the railroad company, at a
special election held in said town, for that purpose, on the
25th day of February, 1887. The grounds of said action
were:

First—Fraudulent representations, promises, and induce-
ments made by the defendant railroad company, its agents
and aid solicitors, to induce sixteen of the petitioners who
signed the petition asking the board of supervisors to call
the special election submitting said question to the voters
of said town, whereby they were induced to sign said peti-

tion, and without the signatures thus fraudulently obtained there were less than fifty legal freehold petitioners upon said petition.

Second—That nine of the signers, whose names appear on said petition, were not freeholders of said town, and that one of the names signed to said petition, to-wit, John Draper, was that of an insane man, incompetent to transact any business, and that he did not sign the same nor authorize any person to sign it for him.

Third—Fraudulent representations and promises made by the agents, officers, employes, and aid-agents of the defendant railroad company, to voters of said "K" town to vote the said bonds.

Upon the trial, the finding of the court, although quite full, was general, and was equally applicable to either of the three grounds covered by the plaintiff's petition.

The opinion of this court hereinbefore referred to is confined to the first proposition stated.

The statute makes it a condition precedent to the submission of a proposition to vote bonds to be donated to a work of internal improvement, that a petition be presented praying for such submission, signed by not less than fifty freeholders of the town, or other municipality, by which the donation is to be made. It appears by the record that fifty-six petitioners signed the petition which was presented to the county board of Seward county, praying the submission of the proposition to vote bonds to the voters of town "K," in said county. The petition upon which the cause was tried alleges that more than sixteen of the petitioners on said petition were induced and prevailed upon to sign and did sign, said petition solely and wholly upon the promises, representations, and agreements of the defendant Fremont, Elkhorn & Missouri Valley Railroad Company, through and by its officers, agents, attorneys, and employes and aid solicitors, that in the event of the submitting of said propositions to and the voting by said town "K" of

the bonds contemplated, said company would immediately, upon the completion of its said road through said town, establish and locate a permanent freight and passenger depot on its said proposed line of road within one-half mile of the center of said town and upon section 16 therein; with other averments 'to the effect that by virtue of the said petition a special election was called in said town "K"; that at said election the said contemplated bonds were voted; that the said railroad had been constructed through the said town, but that the said defendant company has failed and refused to locate and erect such depot, at or near. the center of said town, or upon said section 16.

As stated in the original opinion, there is a large amount of evidence tending to prove that seven of the persons who signed the said petition were induced to do so solely by the promise of persons representing said railroad company, that the depot in said town "K" would be located at the point named in the petition in this action. This general proposition is scarcely denied or contested by counsel in the brief on the reargument; but they contend that the persons making these promises and inducements were not authorized to bind the railroad company thereby, and that such promises and agreements were not made at such times as to become and be a part of the *res gestæ* of the signing of said petition by the said several petitioners.

There was evidence before the district court, from which it could have found, and doubtless did find, that four of the signers to the petition, to-wit, Wullenwaber, Sorter, Hudson, and Barthold, were induced to sign the same by promises as to the location of the said depot, made directly to them severally by I. F. Goehner; that one of said signers, to-wit, Fetten, was induced to sign the said petition by promises in relation to the location of said depot made to him by said I. F. Goehner indirectly through his co-petitioner Wullenwaber; that one of said signers, to-wit, Spahr, was induced to sign said petition by promises in

relation to the location of said depot, made to him by the said I. F. Goehner, indirectly through his co-petitioners Wullenwaben, Sorter, and Hudson; and that one of said signers, to-wit, Rogge, was induced to sign said petition by promises made to him by the said I. F. Goehner indirectly through his co-petitioner Hudson.

It is not contended that the said I. F. Goehner had direct authority from the board of directors of the defendant railroad company to make the said promises, or any promises, to the said signers or any of them to induce them to sign the said petition, but it is contended, and is believed, that the evidence sufficiently proves that he was authorized by the last-named defendant, indirectly, through P. E. Hall, the superintendent of construction of the defendant railroad company, to procure the signatures of a sufficient number of the freeholders of the said town "K" to the petition for said election for voting bonds and to do the necessary soliciting and electioneering for the accomplishing of that purpose. Also that the petition calling for said election, and which was afterward signed by the freeholders of said town "K," as hereinbefore stated, presented to the county board of Seward county, and upon which said election was in fact called, was, by the attorney of said company, who, in concert with the said superintendent of construction was actively engaged in behalf of said railroad company in soliciting and procuring the donation of bonds to said company by the several towns upon the line of its road in Seward county, and especially of town "K," prepared and placed in the hands of said I. F. Goehner, with authority and instructions that he, solely or in connection with W. Q. Dickinson, procure the signatures of the freeholders of said town "K" thereto, and take and use all of the necessary, proper, and expedient steps and measures for that purpose. And this, it is believed, conferred sufficient authority upon the said I. F. Goehner to bind the said defendant railroad company, by a promise to the signers of the

34

petition, or those who would afterward, in consideration thereof, become signers, that a depot of said road should be located at a designated point.    It follows, I think, that Mr. Goehner, having authority as above stated, and the object to be accomplished being one of taxation of private property, yet nevertheless was a public township concern in which one individual voter could alone accomplish but little, his authority was sufficient to operate through and by the aid of his associates, who were his neighbors, and but lately his fellow emigrants from a foreign country. The promises, therefore, of Goehner made to Fetten, Spahr, and Rogge, through Wullenwaber, Sorter, and Hudson, were the promises of the defendant railroad company made indirectly by the superintendent of construction and attorney.    I might add that it appears from the evidence that many of the signers of the petition for the election were present at a public meeting and heard the attorney of the railroad company, in a public speech, made within the general scope and plan of the company's solicitation of donations from the several towns of Seward county, and especially town "K," promise on the part of the railroad company that the said company would locate and build a freight and passenger depot within a half mile from the center of section 16, in said "K" town, in Seward county.

The appellant railroad company contends, in the brief, on rehearing, that the statements and promises made to the petitioners, either directly or indirectly by or through Goehner, are no part of the *res gestæ*.    In the limited time at my disposal I have been unable to find any case where the declaration of an agent has been held to be not of the *res gestæ*, because made before the final consummation of a contract.    And I concede that in most of the cases the test has been whether the declaration was made at the time or so soon after the transaction or event as to forbid the conclusion that it was made as the result of study or reflection,

and in view of its effect as evidence.  I cannot conceive that a declaration made in the course and progress of a negotiation and for the purpose of effecting the consummation of an agreement, is any the less a part of the *res gestæ* because of its being made at a previous interview shortly before the one at which such declaration or inducement resulted in the consummation of the contract.

It is also contended that because the petition was kept in the store of Mr. Goehner and presented to the signers by Mr. Dickinson, the promises and inducements made and held out by Dickinson to procure signers to that paper, cannot be considered a part of the *res gestæ*, although Dickinson and Goehner were engaged in the common work of soliciting petitioners and voters for the common purpose of obtaining the coveted donation by "K" town to the railroad company.   I cannot agree to this proposition.

It is not deemed necessary to add to what is said in the original opinion as to the ratification and adoption on the part of the railroad company of the means used by the persons acting as its agents, procurers, and promoters, further than to say that a careful examination of the opinion fails to cast a doubt upon it as a correct exposition of the law in that respect.

I conclude, therefore, that there is sufficient evidence in the bill of exceptions to sustain the finding of the trial court that seven of the fifty-six signers of the petition, upon which the election for the bonds was called in "K" town, were induced to become such signers by means of the false, and in law fraudulent, representations of the defendant railroad company in respect to the location and erection of the railroad depot in the town of "K." This number of signers being eliminated from the petition leaves but forty-nine signers, less than the number required by statute to authorize the calling of such election.

There is another branch of the case which, though not treated in the original opinion, is worthy of some notice.

It appears from the evidence that six of the signers of the petition, upon and by virtue of which the election for the issuance and donation of the railroad bonds in town " K " of Seward county was called and held, to-wit, Suddith, Muir, Miner, Pederson, Schultz, and Ebberpacher, were not, nor were either of them, freeholders of said "K" town at the time or date of the signing of said petition and the calling of said election, and that one of the signers of said petition, to-wit, Draper, was, at the time and date of the placing of his name to the said petition, insane and legally an inmate of the state hospital for the insane, to which he had been legally committed and from which he had never been discharged, but was at the time in fact discharged. Moreover, that he did not sign the said petition, but that his name was without authority written thereon by a Mr. Atwater. Thus it appears, and was evidently so found by the trial court, that there were not to exceed forty-two legal signers to the said petition. The judgment of the district court is again

AFFIRMED.

MAXWELL, J., concurs.

NORVAL, J., did not sit.