SIMONDS *v.* CASH.

1. SALE OF MORTGAGES—VALUE OF SECURITY—FALSE REPRESEN-
TATIONS.

Where defendant, who sold mortgages to plaintiff, either de-
livered to plaintiff's agent, or assisted him to obtain, appraise-
ments of the land covered by the mortgages, on which plain-
tiff relied, defendant was responsible for the representations
contained therein.

2. SAME—RESCISSION—TENDER—DELAY.

Plaintiff, a resident of Massachusetts, who did not, until some-
time after January 25th, learn of the fraudulent representa-
tions of defendant in selling mortgages to him, and on Febru-
ary 7th had his son call on defendant, who resided in Michigan,
and explain the situation, and on March 12th wrote defendant,
narrating the facts, and offering to reassign the mortgages,
and made a formal tender thereof on May 25th, was not
chargeable with improper delay in making the tender.

3. SAME.

Plaintiff, who bought mortgages of defendant, relying on
representations that the land was worth three or four times
the amount of the mortgages, was not bound to rescind at
once on discovering that the land was worth less, where the
facts, as he supposed them to be, still induced him to believe
that it was worth twice the amount of the mortgages.

4. SAME—GROUNDS OF RESCISSION—QUESTION FOR JURY.

Where plaintiff, in writing to defendant as to mortgages sold
to him by the latter, stated that he had satisfied himself that
the land was not of the value represented, and that the titles
were bad, and offered to reassign the mortgages, the jury, in
a subsequent action founded on rescission, might infer that
plaintiff sought to rescind on the ground of misrepresenta-
tions as to the character and value of the security.

5. SAME— RIGHT TO RESCIND —SUSPICION OF FALSITY OF REPRE-
SENTATIONS.

Plaintiff, in his efforts to rescind a purchase of mortgages on
the ground of misrepresentations as to the character and
value of the security, had a right to act upon his suspicion of
the falsity of the representations, provided that, in a subse-

quent action founded on rescission, he could prove that his
suspicion was well founded.

6. JURORS—CHALLENGE FOR CAUSE—APPEAL—HARMLESS ERROR.
Where the record does not show that a person challenged for
cause actually sat as a juror, or that the party challenging
him exhausted his peremptory challenges, it cannot be as-
sumed that the overruling of such challenge, even if errone-
ous, was prejudicial.

7. EVIDENCE—COPY OF LETTER.
Where a copy of a letter informing plaintiff of defendant's
alleged fraud formed the subject-matter of a conversation be-
tween defendant and plaintiff's representative, the identical
paper which was the subject of the conversation was admissi-
ble in evidence.

8. SAME—DEPOSITIONS—NOTICE—PRESUMPTION.
Where a deposition has been on file in a cause for nearly two
years, it is to be presumed, in the absence of evidence to the
contrary, that the law which requires the official receiving
the deposition to give notice to the parties (3 Comp. Laws,
§ 10139) was observed.

9. SAME—WAIVER OF OBJECTIONS.
Under 3 Comp. Laws, § 10139, providing that objections to the
notice of or manner of taking depositions, or certifying or re-
turning the same, shall be regarded as waived unless made
within three days after notice of the return thereof, an ob-
jection that there is no proof that a deposition was taken
in pursuance of a notice or under a stipulation, when not
so made, is waived.

10. SAME—IDENTITY OF EXHIBITS.
So, too, objections arising out of the fact that certain exhibits,
already in evidence, were not attached to the deposition, are
waived if not so made, and the introduction of evidence on the
trial identifying the exhibits is not prejudicial.

11. SAME—LETTERS—CROSS-EXAMINATION.
It was not error on the cross-examination of a witness to re-
fuse to permit a question whether he wrote a letter referred
to in another letter, unless the latter letter was put in evi-
dence.

12. FRAUDULENT REPRESENTATIONS—VALUE OF LAND—EVIDENCE
—MATERIALITY.
On an issue of fraudulent representations as to the value of
land covered by mortgages sold by defendant to plaintiff,

testimony by deposition that the land was of no value, or of small value, was not "entirely worthless and immaterial," though one of the parcels was misdescribed, since it referred to some of the land in controversy.

13. SAME—DEPOSITIONS.

Objections to the admission of the depositions of the makers of the mortgages on the ground that their testimony related simply to fraud in obtaining the title, and the title was unquestionably good, were properly overruled, since the depositions tended to prove the falsity of representations that certain improvements had been made on the mortgaged land.

14. TRIAL—CONDUCT OF COUNSEL—PRACTICE.

Where, on the trial of a cause, three counsel were talking at the same time, it was proper for the trial judge to state that arrangements must be made by which a single counsel for each party should make objections.

15. SALE OF MORTGAGES—VALUE OF LAND—FALSE REPRESENTATIONS—RIGHT TO RESCIND.

Where the land covered by mortgages sold by defendant to plaintiff, though of sufficient value to repay the loans, was worth materially less than it was represented to be, the value of the securities was thereby affected, and plaintiff was entitled to rescind the sale.

16. SAME—INSTRUCTIONS.

In an action to recover the amount paid upon an alleged fraudulent sale of mortgages, a charge that, if the lands covered thereby differed in any material respect from what they were represented to be by defendant, so that they were not worth (as represented) three or four times the amount paid by plaintiff, the latter was entitled to rescind, was not open to the objection of authorizing plaintiff to recover though the security was not of less value than it was represented to be.

17. SAME—PLEADING—COMMON COUNTS.

A purchaser of mortgages, on rescinding for fraud, may recover the amount paid under a declaration on the common counts.

18. PLEADING—DECLARATION—SPECIAL COUNTS—VARIANCE.

A variance between the averments of the special counts of a declaration and the proofs is immaterial, where, in view of the evidence, plaintiff is entitled to recover under the common counts, which are a part of his declaration.

Error to Ionia; Davis, J. Submitted April 15, 1904. (Docket No. 66.) Decided May 17, 1904.

*Assumpsit* by Francis K. Simonds against Vincent P. Cash to recover the amount paid on an alleged fraudulent sale of mortgages. From a judgment for plaintiff, defendant brings error. Affirmed.

*V. H. & H. H. Smith,* for appellant.

*George E. & M. A. Nichols,* for appellee.

CARPENTER, J. In the month of July, 1892, defendant sold to plaintiff certain mortgages upon land in North Dakota. On the 25th of May, 1894, under the claim that he was induced to make this purchase by the fraudulent representations of defendant, plaintiff tendered them back, and demanded the return of the amount paid therefor. Defendant refused to comply with this demand, and plaintiff subsequently brought this suit, and recovered a verdict and judgment in the court below.

Defendant insists that plaintiff was improperly permitted to recover by reason of misrepresentations contained in certain appraisements; that defendant is not responsible for these misrepresentations, because plaintiff obtained these appraisements himself by correspondence with parties in North Dakota, with which correspondence defendant had nothing to do. We think the jury might have inferred from the testimony in this case that defendant was himself responsible for the delivery of these appraisements to plaintiff, either by handing them directly to plaintiff's agent or by assisting him to obtain them. Under these circumstances, the jury might very properly hold defendant responsible for the misrepresentations therein contained. See *Busch* v. *Wilcox,* 82 Mich. 315 (46 N. W. 940). Nor can we agree with defendant in the claim that the evidence proves that plaintiff did not purchase the mortgages in question relying on the statements in these appraisements.

It is contended that there was improper delay on the part of plaintiff in tendering back these mortgages after the discovery of the fraudulent misrepresentations. The

136 MICH.—36.

facts respecting this discovery and tender are these: Some time after January 25, 1894, plaintiff learned of the alleged fraud. He lived in Boston, Mass. Defendant lived in Portland, Mich. On the 7th of the following February plaintiff's son called on defendant, and told him the situation. Defendant wrote to his brother-in-law in North Dakota about the matter. March 12th plaintiff wrote defendant, narrating the facts, and offered to reassign the mortgages. May 25th a formal tender was made. We think, under these circumstances, that plaintiff proceeded with due promptness.

The suggestion is made in defendant's brief and argument that plaintiff discovered in August, 1892, that the land described in the mortgages was worth less than the appraisements stated. The point was not made, however, in the court below, that it thereby became the plaintiff's duty to at once rescind, if he intended to take advantage of the falsity of this representation. It was probably not made because of the obvious answer that what plaintiff learned in 1892 was only part of the truth, and, if the facts had been as he supposed them to be at that time (viz., that the mortgaged land was worth twice—though not three or four times—the amount of the mortgages, his interest did not demand a rescission.

Defendant also contends that plaintiff, in recovering in this case, is shifting his ground; that he sought to rescind on the ground that the title to the mortgaged property was worthless, and that he was permitted to recover upon the ground that, though the title was good, the security was neither in character nor value as represented. It is true that the title to the mortgaged property was good, and that plaintiff recovered upon the ground that the security was not what it was represented to be. But it is not fair to say that he sought to rescind solely because the title was worthless. In the letter of March 12, 1894, heretofore mentioned, plaintiff states:

"The papers are in no way as you represented them, in any particular. I have satisfied myself, through most

careful inquiry, that there never was the value you represented; also the titles were bad."

And the jury might have inferred that plaintiff sought to rescind on the ground of the misrepresentations as to the character and value of the security.

When plaintiff attempted to rescind, he had not been informed, and did not know, that the representations respecting the character and value of the mortgaged land were false. It is, however, to be inferred, as we have already stated, that he suspected their falsity. It is contended by the defendant that plaintiff had no right to rescind on the ground of the falsity of these representations until he had actually learned them to be false. We do not think this contention sound. Plaintiff had a right to act upon suspicion, if he could subsequently prove that suspicion to be well founded.

One of the jurors called in the case was a party to a suit then pending in court. One of plaintiff's counsel was his attorney, and the opposing party was represented by defendant's counsel. A challenge for cause to this juror was overruled. The record does not show that this juror actually sat in the case, or that defendant exhausted his peremptory challenges. We cannot, therefore, assume that the ruling complained of, even if erroneous, was prejudicial to defendant. *People* v. *Rush*, 113 Mich. 539 (71 N. W. 863).

It is claimed that the court erred in permitting plaintiff to introduce in evidence a copy of a letter which informed him that defendant's representations were fraudulent. It is contended that the original, and not the copy, should have been introduced. This paper was admissible in evidence upon the ground that it formed the subject-matter of the conversation between defendant and plaintiff's representative. The identical paper—viz., the copy in question—which was the subject of this conversation was admissible. We see no ground upon which the original, which was in the possession of a third person, could have been admitted.

It is contended that the court erred in admitting in evidence the deposition of Hon. Henry C. Smith, who testified that, acting for plaintiff, he tendered the securities and their assignment to defendant. This contention is based upon the ground that there is no proof that the deposition was taken in pursuance of a notice or under a stipulation. It does appear, however, that defendant's counsel appeared when the deposition was taken, and cross-examined the witness. It also appears that the deposition was on file in the case for nearly two years. It is to be presumed, in the absence of evidence to the contrary,—and there is no such evidence,—that the law which requires the official receiving this deposition to give notice to the parties (section 10139, 3 Comp. Laws) was observed; and therefore, according to said section, the objection in question was waived, because not made "within three days after" said notice.

For the purpose of proving what was tendered defendant, the witness identified the original securities and assignments executed by plaintiff transferring them to defendant. These were marked as exhibits, but were not attached to the deposition. Plaintiff's attorney, who acted for him in taking these depositions, was permitted to give testimony on the trial identifying these exhibits. Defendant contends that the admission of this testimony was error, on the ground that the uncertainty respecting what exhibits were referred to in the deposition could not be cured in this manner. There really was no uncertainty respecting the identity of these papers. The trial court was quite right in saying that there was "no claim made by the defendant in this case that these papers offered here are not in fact the exhibits referred to." The language of the deposition is applicable to no other exhibits. The purpose of attaching the exhibits to the deposition, and the purpose of identifying them, was not to get them in evidence,—they were already in evidence,—but it was to enable the court and jury to understand the deposition. The testimony identifying the exhibits was therefore prejudicial

to defendant only because it served the purpose of attaching to the deposition the exhibits omitted by the officer who took it. In other words, the testimony was prejudicial only because it had a tendency to correct the improper manner of certifying and returning the deposition. Under section 10139, 3 Comp. Laws, all objections of this character were waived unless made within three days. We are bound to conclude, therefore, that defendant was not prejudiced by the introduction of this testimony.

On the cross-examination of plaintiff's son and agent, the court refused to permit defendant's counsel to ask him whether he wrote a letter referred to in another letter, unless the latter letter was put in evidence. We do not think that there was error in this ruling.

Questions were asked of certain witnesses whose testimony was taken by deposition respecting the value of the land covered by the mortgages in question, and one of the pieces of land was described as the south quarter of section 35, instead of the southeast quarter of section 35. The other descriptions were correct. It is claimed that this testimony, obtained by these questions, "was entirely worthless and immaterial." To this we cannot agree, for some of these witnesses testified that the land was of no value; others, that it was worth only $2 per acre. As the testimony referred to some of the land in controversy, it was not "entirely worthless and immaterial testimony."

Defendant contends that the court erred in admitting in evidence the depositions of the makers of the mortgages in question, on the ground that their testimony related simply to fraud in obtaining the title, and the title was unquestionably good. It is a complete answer to this contention to say that these depositions did not relate solely to the title. They tended to prove the falsity of representations—for which defendant might be held responsible—that certain improvements were made on the mortgaged land.

On the trial below, each party was represented by two counsel. It appears from the bill of exceptions that at

one time three counsel were talking at the same time. The trial judge thereupon stated that arrangements must be made by which a single counsel for each party should make objections. While defendant complains of this course, we are bound to say that, in our judgment, it was a very proper one to be adopted.

In charging the jury the court said that:

"If the said lands differ in any material respect from what they were represented to be by said defendant, * * * so that they were not worth three or four times the amount paid by Simonds, then the said plaintiff has the right to rescind the entire transaction, and to tender back the mortgages and notes which he purchased, * * * and recover the money that he paid therefor, together with the interest thereon."

It is contended that this is error, because it permits plaintiff to recover where he has not really been injured; that, if the security is sufficient to repay the loan, then, though it is worth much less than represented, no fraud was committed which entitled plaintiff to rescind. This theory is unsound. If it were sound, a negotiable promissory note of an individual, which is quite certain to be paid, would be as valuable as United States government bonds. If the land was worth materially less than it was represented to be, it materially affected the value of the securities, and entitled plaintiff to rescind. We do not think the foregoing charge, nor other portions of the charge, authorized the plaintiff to recover, as defendant contends it did, unless the security was less valuable than it was represented to be.

It is claimed that the special counts of the declaration did not correctly state the grounds upon which plaintiff was permitted to recover. We shall not undertake to determine this question, because plaintiff could recover under the common counts (see *Cornell* v. *Crane*, 113 Mich. 460 [71 N. W. 878]), which were a part of his declaration.

We think defendant's brief points out no reversible error.

The judgment of the court below will be affirmed.

MOORE, C. J., and HOOKER, J., concurred.  GRANT, J., did not sit.  MONTGOMERY, J., took no part in the decision.