OXYGENATOR COMPANY, APPELLANT, v. CASSIUS C. JOHNSON, APPELLEE.

FILED APRIL 1, 1916. No. 18642.

1. **Sales: IMPLIED WARRANTY.** Where a manufacturer or dealer contracts to supply an article which he manufactures, or in which he deals, there is in such case an implied warranty that the article will be reasonably fit for the purpose to which it is to be applied.

2. ————: WARRANTY: BREACH: DAMAGES. In an action for damages for a breach of warranty as to the quality of personal property, where there is no rescission of the contract, the measure of damages is the difference between the value of the property as it actually is and what it would have been worth had it been as represented at the time the warranty was made.

3. ————: ACTION FOR PRICE: DEFENSE: EVIDENCE. The defendant having pleaded that the property in question was worthless, and having submitted proof tending to establish the fact alleged, the verdict of the jury so finding will be sustained.

APPEAL from the district court for Gage county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*Kretsinger & Kretsinger,* for appellant.

*Hazlett & Jack* and *Walter Vasey, contra.*

99 Neb. 41

HAMER, J.

This is an appeal by the plaintiff from the judgment of the district court for Gage county. It is alleged in the petition that between November 1, 1909, and February 4, 1910, the plaintiff sold and delivered to the defendant certain goods, wares and merchandise of the value of $1,499.60, on which amount the defendant paid the sum of $743.20, leaving still due to the plaintiff the sum of $756.40; that the said goods, wares and merchandise were sold under a written contract, a copy of which was set forth, and consisted of 292 oxygenators; that the plaintiff had performed all terms and conditions incumbent upon it to perform, and was entitled to recover against the said defendant.

The defendant answered, admitting that he ordered the oxygenators from the plaintiff, but he alleged that the machines were not perfect, as the plaintiff represented they would be; that they were not perfect because they were not hermetically sealed, and were, as a matter of fact, entirely worthless; that therefore the defendant was not indebted to the plaintiff. The defendant also set up a counterclaim containing three alleged causes of action against the plaintiff. In the first he alleged that he purchased 292 oxygenators from the plaintiff under the contract referred to; that they were to be perfect instruments, but in fact they were not hermetically sealed, and therefore were worthless; that he suffered damages by reason of said defective machines in the sum of $2,850. There was a second cause of action, which need not be discussed because it was withdrawn from the consideration of the jury.

In the defendant's third cause of action he alleged that the plaintiff purposely shipped him defective and worthless instruments in order to create an apparent indebtedness to the plaintiff for said machines, and, using said apparent indebtedness as a pretext, that the plaintiff wilfully and maliciously canceled said contract on the 21st

of February, 1910, and refused to furnish any more machines; that by said means the plaintiff purposely and intentionally destroyed the defendant's business, which was worth at least $3,000 a year, and that defendant was greatly damaged thereby.

To the defendant's answer and counterclaims the plaintiff filed a reply and an answer in the nature of a general denial. The cause was submitted to a jury, which returned a verdict on the 25th of October, 1913, for the sum of $1,719.05 for the defendant, Johnson. The jury also made special findings: (1) That there was nothing due plaintiff from the defendant; (2) that there was due defendant from plaintiff on the defendant's first cause of action in his counterclaim the sum of $1,219.05; (3) that there was due from plaintiff to defendant on defendant's third cause of action in his counterclaim the sum of $500.

There was a motion for a new trial, and the court was of the opinion that there was not sufficient evidence to sustain defendant's third cause of action for any amount, and granted plaintiff a new trial thereon. The court also required the defendant to remit from the special verdict of $1,219.05 the sum of $601.65. Finally, the court made an order requiring the defendant to remit the sum of $1,101.65 from the general verdict, or submit to a new trial, and, upon the remittitur being filed, overruled the motion for a new trial and rendered judgment for defendant in the sum of $617.40.

It is not disputed that the plaintiff was to furnish the defendant with perfect machines. The oxygenators seem to have been worthless. The defendant testified that of 292 of these machines there were a few more than 100 that were not hermetically sealed. He and his assistant, Ira R. Gould, tested them. Gould's testimony corroborated Johnson's testimony. Johnson testified that if the instruments had been in perfect condition each one would have been worth $35. He further testified that of these 292 instruments he sold about 50 for $6.50 each, and the remainder at prices ranging from $17.50 to $25 each. Johnson testi-

fied that the machines were worthless and without any value, and utterly failed to meet the conditions of the guaranty.

Charles 'N. McMichael testified that he was at present treasurer and bookkeeper of the Oxypathy Company, and that the company had formerly been called the Oxygenator Company, and that he had then been the treasurer and bookkeeper of that company; that he had had correspondence with the defendant, Cassius C. Johnson, and that his company had shipped Johnson some goods, and that he owed the company a balance of $756.40. He testified to various charges against Johnson, and credits, leaving the balance above stated. The contract between the defendant, Johnson, and the plaintiff shows the latter to be "the sole owner and proprietor and exclusive manufacturer of clinical instruments known as "Duplex Oxygenator" and "00 Duplex Oxygenator," and recites that said Cassius C. Johnson is desirous of having the exclusive right to vend and sell said machine in certain territories of the United States. The exclusive right is granted "to sell the Duplex Oxygenator and the 00 Duplex Oxygenator within the states of Washington, Oregon, California, Nevada, Arizona, Utah, Idaho, Montana, Wyoming, Colorado, New Mexico, South Dakota, Nebraska, Kansas, Iowa, Missouri, and the counties of El Paso, Reeves, Jeff Davis, Presidio, Brewster, Pecos, Ward, Loving, and Winkler, in the state of Texas." At least 584 machines were agreed to be purchased, for which the defendant was to pay $5 each for the 00 Duplex Oxygenator, and $4 for each Duplex Oxygenator not in the 00 class. It was also agreed that the plaintiff would furnish as many more machines in excess of 584 as could be supplied by the plaintiff, having due regard for "supplying other territories in which sales of said machine are made."

The evidence shows that a book is distributed along with each machine. Pictures of the machine are shown by the record, and also the picture of a winding path through a beautiful forest. The machine itself seems to be a cylinder

containing metals and chemicals said to be of mysterious and wonderful power. The oxygenator itself is declared to never require "recharging." "As you receive it from us, so you use it forever, the simple, silent doctor, does its duty and sends in no bills." It is so written in the book.

It is evident from Johnson's testimony that, if the instruments were not hermetically sealed, then they were perfectly useless.

Where a manufacturer or dealer contracts to supply an article which he manufactures, or in which he deals, there is in such case an implied warranty that the article will be reasonably fit for the purpose to which it is to be applied. Newmark, Law of Sales, sec. 333; 1 Beujamin, Sales (6th ed.) sec. 657; *Omaha Coal, Coke & Lime Co. v. Fay,* 37 Neb. 68. In the latter case it is said in the syllabus: "Where one contracts to supply a commodity in which he deals, to be applied to a particular purpose of which he is aware, under such circumstances that the buyer necessarily trusts to the judgment of the vendor, there is an implied warranty that the commodity shall be reasonably fit for the purpose to which it is to be applied."

"In an action for damages for a breach of warranty or fraudulent representations as to the quality of personal property sold, where there is no rescission of the contract, the measure of damages is the difference between the value of the property as it actually was and what would have been its value had it been as represented at the time the representation or warranty was made." *Young v. Filley,* 19 Neb. 543. *McConnell v. Lewis,* 58 Neb. 188; *Sherrill v. Coad,* 92 Neb. 406.

In *Young v. Filley, supra,* it is said in the body of the opinion: "Where there is no allegation of a rescission of the contract, the measure of damages is the difference between the value of the corn as it really was at that time and what it would have been worth had it been as represented."

In *Sherrill v. Coad, supra,* it is said in the syllabus: "In an action by a vendee for damages for a breach of warranty or fraudulent representations by the vendor as to the

quality of personal property purchased, where there is no rescission of the contract, the measure of damages is the difference between the value of the property as it actually was and what would have been its value had it been as represented at the time the representation or warranty was made."

If the entire property is worthless, the entire value of such property as it was warranted is a measure of damages, and can be recovered. Burdick, Sales (3d ed.) sec. 352; 2 Mechem, Sales, sec. 1817.

If the property was worthless, the defendant was not obliged to return it. *Punteney-Mitchell Mfg. Co. v. North-wall Co.*, 66 Neb. 5.

In the syllabus of the above case it is said: "Where the vendor, in pursuance of a contract of sale, delivers goods which do not conform to the warranty, which the vendee for that reason returns, or duly offers to return, and the vendor fails to furnish goods conforming to the warranty, the vendee has a right of action for breach of contract, and in such action is entitled to recover such damages as may be reasonably supposed to have been in contemplation of the parties, when the contract was made, as the probable consequences of such breach."

If the verdict rendered gave the defendant more than he was entitled to under the pleadings, this could be cured by the remittitur.

The defendant having pleaded and submitted proof that the property in question was worthless, it was proper that the jury might so find, and the court may take judicial notice that the property had no value. *Punteney-Mitchell Mfg. Co. v. Northwall Co.*, 66 Neb. 5.

The chemicals and material in the cylinder of the oxygenator being the thing which made the instrument valuable, if it was valuable, and these being worthless because not hermetically sealed, it was proper for the jury to take the defendant's view that the instruments had no value.

As the defendant was not in default, he did not owe the plaintiff anything, and the plaintiff had no right to break

the contract; but, if the court erred in its instruction to the jury concerning the third cause of action, it is to be kept in mind that the plaintiff also claims that, if the defendant was in default, then the contract terminated according to its own provisions. The remittitur was properly allowed. In view of the uncertain value of the property and the uncertainty of the profits in the sale of it, we are unable to say that the judgment of the district court as a whole is not right.

The judgment of the district court is

AFFIRMED.

LETTON, J., concurs in the conclusion.

FAWCETT and SEDGWICK, JJ., not sitting.