Nos. 20,552 and 20,553.

CHARLES I. RUSH and LOUISA RUSH, *Appellees*, v. R. A. LEAVITT, *Appellee*, C. V. COX and BETTIE G. COX, *Appellants*.

### SYLLABUS BY THE COURT.

1. SALE—*Land—Vendor Liable for Fraud of Agent.* One who sells land through an agent is responsible in damages for the fraud of the agent in making false statements concerning its character, by which the sale is effected, even although the principal had no knowledge of their having been made.

2. SAME—*Agency Established by the Evidence.* The evidence held sufficient to support a finding that the land sold was the property of the person in whose name the title stood, and that the person making the false representations was his agent in effecting the sale.

3. SALE—*Land—Contract Made by Third Party—Adopted by Vendor—Agency Created—Liability for Fraud.* The owner of land who adopts the acts of another in negotiating its sale, thereby makes him his agent, and renders himself liable to the buyer in any damages sustained by reason of false statements by which the sale was effected, made by such person for that purpose before the agency was created, notwithstanding the owner had no personal knowledge of the fraud.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed January 6, 1917. Affirmed.

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellants.

*John W. Adams,* and *George W. Adams,* both of Wichita, for appellees Charles I. Rush and Louisa Rush.

The opinion of the court was delivered by

MASON, J.:  Charles I. Rush and Louisa Rush exchanged some lots in Wichita for a tract of land in Arkansas.  The deed to the Arkansas property came from C. V. Cox and his wife, Bettie Cox, and the deed to the Wichita property was made to Bettie Cox, but the trade was negotiated by R. A. Leavitt.  Later the Rushes brought an action for damages against Leavitt and the Coxes on the ground that they had been defrauded by false representations made to them by Leavitt as to the character and value of the Arkansas land. The plaintiffs recovered a judgment and the defendants appealed.  Leavitt, however, has abandoned the proceeding, and the appeal is prosecuted only by the Coxes.

1.  That the trade was induced by actionable false statements by Leavitt regarding the Arkansas land may be treated as an established fact, for it is not here contested.  But the Coxes contend that the evidence did not warrant a judgment against them, since there was no claim that either of them personally made any representations, and no direct evidence that they specifically authorized any, or knew of any being made. Whether or not the evidence justified an inference that they actually participated in the fraud, we think the judgment can be sustained on the theory that Leavitt was their agent for the sale of the Arkansas land, that the deceit practiced by him constituted a tort committed in the course of his employment, for which his principals were liable, even if they had no knowledge of the fraud.  (31 Cyc. 1583; 2 Enc. L. & P. 1200, 1203; Notes, 33 Am. St. Rep. 720; 36 Am. St. Rep. 704; 85 Am. St. Rep. 372.)

2.  Leavitt and C. V. Cox both testified that Leavitt was the real owner of the Arkansas land, the title having been placed in Cox as security for a debt, and that the Wichita lots were deeded to him for the same purpose—as a substitute for the Arkansas property.  But the jury found specifically that this was not the case.  The finding was supported not only by the presumption of the real ownership being in the holder of the legal title, but by evidence that Leavitt had referred to the Coxes as "the parties that own this land," and by the circumstance that the Coxes shortly conveyed away the Wichita

Rush v. Leavitt.

lots, and that C. V. Cox in the course of several conversations with Charles I. Rush appears not to have suggested his relation to the property being that of a lienholder. Leavitt's testimony was contradicted by other witnesses in a number of material matters, so that the jury had abundant basis for discrediting it. Assuming that the land belonged to the Coxes, the evidence justified a finding that Leavitt was their agent for its sale. Cox testified that prior to the trade he talked with nobody but Leavitt about it; that Leavitt came to him and said he could make the exchange, and that they went together to see the Wichita lots, or rather drove by them, as Leavitt outlined the kind of a deal that was pending. Leavitt testified that he went to see Cox about the trade and he said it would be all right—that he took him up and showed him the Wichita property.

3. The appellants complain of an instruction to the effect that if C. V. Cox was the owner of the Arkansas land, and through Leavitt it was traded to the plaintiffs by means of false representations, the plaintiff's property being deeded to one of the Coxes, and by them sold and conveyed to other persons, Cox would be the principal in the transaction, and liable for the fraudulent acts of Leavitt as his agent, for any damage sustained. A verbal criticism is made on the ground that the expression "through Leavitt" is too indefinite to be made the basis of a finding of agency, because the sale might have been made through Leavitt acting for himself or for someone else. But if the land was owned by Cox its sale was necessarily made by him, and if made "through Leavitt" as that phrase must be understood in view of the uncontroverted facts of the case, it was the result of Cox adopting Leavitt's acts, and making him his agent, even if no agency existed at the time the fraudulent statements were made. Counsel contend, however, that if Leavitt had no antecedent authority to represent Cox, and made the false statements as a volunteeer before any agency existed, and Cox afterwards accepted the fruits of the negotiation and made the sale, Cox might be required to account for any benefit he received, but could not be liable, unless he were a party to the fraud, in such an action as the present, where the jury were instructed that the measure of damages was the difference between the actual value of the Arkansas

land and what its value would have been if it had been as described, that being the rule in this jurisdiction. (*Stroupe v. Hewitt,* 90 Kan. 200, 133 Pac. 562; *McDanel v. Whalen,* 91 Kan. 488, 138 Pac. 590.) We think Cox's liability must be held to be the same whether he had authorized Leavitt to find a buyer for the Arkansas land, before the false representations were made, or whether he approved and acted upon the deal that had been negotiated by Leavitt, without having had any understanding or relations with him in advance. In the latter case, by ratifying the deal that had been made in his behalf he took the bargain in its entirety, with its burdens as well as its benefits, and became liable for the fraud perpetrated for his benefit by the man whom he made his agent by ratification.

"As against the principal the maxim *omnis ratihabitio,* etc., is operative in all cases; and upon ratification with full knowledge of the facts, or upon an intentional ratification regardless of knowledge, of an act done or contract made by an agent without authority, the principal is bound as fully as if the agent had acted under original authority. . . . By a valid ratification the principal waives the agent's want of authority, and assumes the act or transaction of the agent, not as it was authorized, but as it was done by the agent, with the burdens as well as the benefits resulting; and hence thereby becomes bound by all the instrumentalities used by the agent within the scope of the assumed authority, including his frauds, misrepresentations, and other torts." (31 Cyc. 1288, 1289.)

"One who accepts the benefits of a contract made without authority in his behalf, after being fully informed of all its terms, must also accept the burdens imposed on him by the contract. So when a contract has been ratified with a full knowledge of the facts, by accepting the benefits thereunder, the principal can not deny the unauthorized representations of the agent by means of which the contract was brought about, even though such representations are fraudulent." (2 Enc. L. & P. 863.)

If a principal has actual knowledge that a sale of land which he is making was brought about by the false statements of the person whose acts in his behalf in that connection he is adopting, there could be no doubt of his equal liability for the previous fraudulent conduct of him whose agency he accepts. To hold him so liable, notwithstanding he may have had no knowledge of the fraudulent representations, imposes no greater hardship than does charging him with responsibility for statements made without his knowledge by the agent after the property had been listed with him. The principal has as

good an opportunity in the one case as in the other to protect himself by ascertaining upon what information the buyer is acting.

The judgment is affirmed.