**RALSTON PURINA CO. v. NOVAK.**

No. 11646.

Circuit Court of Appeals, Eighth Circuit.

May 8, 1940.

Rehearing Denied May 31, 1940.

632

Winthrop B. Lane, of Omaha, Neb. (Cottrell Fox, of St. Louis, Mo., and Arthur R. Wells and Paul L. Martin, both of Omaha, Neb., on the brief), for appellant.

Alfred C. Munger, of Omaha, Neb., and Robert R. Moodie, of West Point, Neb., for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This was an action at law brought by the appellant as plaintiff to recover a balance due on the agreed purchase price of a certain consignment of hog feed which it had sold and delivered to the appellee. We shall refer to the parties as they were designated below.

The total purchase price was $6,120, on which there had been paid $3,519.15, leaving a balance due of $2,600.85. Defendant answered, alleging that the sale had been induced by false and fraudulent representations; that the hog feed was not as warranted but was worthless. He then counter-claimed for damages because of the alleged fraud, alleging that as the result of using the feed his hogs became ill and eighty-five of them died, and that he necessarily expended certain sums of money in medicine in his attempt to save the remaining hogs; that the feed was not suitable nor safe for use for the purpose of feeding and fattening hogs. He alleged that the plaintiff had represented and warranted that the feed was of excellent quality and could be fed exclusively or as the principal feed to his hogs; that it was nutritious and of such quality as hog feed and as a fattener that 300 pounds of it would produce 100 pounds of pork upon his hogs; that it was perfectly safe to use this feed exclusively or in combination with any other feed; that its quality was superior to corn for the purpose of fattening hogs. Other representations and warranties were pleaded, and it was alleged that the representations and warranties pleaded induced defendant to purchase, and that they were false; that he gave notice to plaintiff promptly upon discovering the injurious effects caused by the feed, threatened to rescind his purchase and to discontinue the use of the feed, but plaintiff had assured him that the death and sickness of the hogs was due to other causes and insisted that he continue to use it and that such continued use would produce the results originally warranted; that he made various complaints during the time he was experimenting with the feed, but was persuaded by plaintiff's agents to continue using the same as the principal feed for his hogs. Defendant alleged that he had been damaged "by the difference between the value of said hog feed at the time of its delivery to the defendant and the value said hog feed would have had if it had been as represented and warranted; that said hog feed was worthless for the intended use, and if it had been as represented it would have had a value of $9,363.00. And in addition thereto defendant had been

damaged by being forced to purchase medicines at a total cost of $225.00 and to use the same for said hogs * * *." He alleged that his total damage was $9,588, for which amount he prayed judgment.[1]

Substantial testimony produced by the defendant tended to sustain all the material allegations of his counter-claim. He had lived on a farm and engaged in farming all his life and was experienced in raising and feeding hogs for the market. The drought of 1936 practically destroyed crops in the country where he lived and he was without the usual corn to carry on hog feeding operations. He had had no experience with the use of this commercial hog feed, and he relied wholly on the representations made to him by plaintiff's salesmen relative to its qualities. These salesmen made the representations alleged in the complaint. Induced by such representations and warranties, defendant ordered 100 tons of this commercial hog feed and bought 300 pigs to feed. During his feeding operations 85 head of hogs died, and when the remaining 215 head were sold they weighed an average of 153 pounds each, and were sold for the net amount of $3,151.95, all of which was taken by plaintiff to apply on the purchase price of the commercial feed. There was testimony showing that the hogs were, before being fed this commercial feed, healthy normal hogs and not suffering from disease. After being so fed, they became ill and eventually became weaker and weaker, until many of them died.

At the close of defendant's testimony introduced in support of his counter-claim, plaintiff interposed a motion for a directed verdict, which was overruled, whereupon plaintiff introduced evidence in rebuttal. Plaintiff did not renew its motion for a directed verdict at the close of all the evidence. The court submitted the case to the jury on the theory that there were two causes of action, one alleged in plaintiff's complaint, and the other in defendant's counter-claim. On plaintiff's cause of action, the jury returned a verdict in favor of defendant. On defendant's counter-claim, the jury found for defendant and assessed his damages in the sum of $1,949. The court thereupon entered judgment for that amount with costs, from which judgment plaintiff prosecutes this appeal.

Appellant, under its "Points to be Argued," urges the following contentions: (1) Pleadings are addressed to and are for the court and not the jury. The issues for the jury are determined by the pleadings, evidence, and law applicable to the case. Incorporating the pleadings into the instructions given to the jury is to be condemned, and if the pleadings contain allegations not proved, or if the pleadings are redundant or ambiguous, and contain evidentiary matter, the giving of the instruction is prejudicial. (2) The plaintiff as a matter of law was entitled to a judgment on its petition for the unpaid balance of the purchase price. When a buyer accepts and retains goods purchased from a seller, he must pay the purchase price and may then counterclaim or sue for damages for breach of warranty if the goods delivered do not fulfill the warranty. (3) Under the provisions of the Uniform Sales Act, there is no implied warranty of fitness for any particular purpose when goods are sold under their patent or trade names. Also when a definite known article is ordered by a buyer and furnished by a seller there is no implied warranty. (4) A warranty to be binding upon a principal must be authorized or ratified by the principal. The principal, by accepting an order obtained by an agent and delivering the goods without knowledge of an unauthorized warranty by the agent, does not ratify the unauthorized act or make the warranty binding upon the principal. Also the retention of the purchase price after the situation has so changed that the parties can not be returned to their original status does not constitute ratification. (5) There is no actionable warranty established in the case at bar. No affirmation of value of goods nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty. (6) Evidence does not establish a breach of warranty. The jury is not permitted to consider the outcome of the defendant's feeding operations without proof as to proximate cause of the same. The proximate cause must be shown by competent evidence and not left to mere speculation. (7) All contemporaneous or prior oral representations or warranties leading up to the execution of a written contract are merged in the final written contract and

---

[1] Defendant's counter-claim seeking to recover damages exceeding $9,000, plaintiff removed the action to the Federal Court.

can not be shown by parol evidence. (8) The measure of general damages for breach of warranty for quality is the difference between the value of the goods at the time and place of delivery and the value they would have had if they had been as warranted. When goods consist of merchandise sold generally in commerce, the test of value is the market value. (9) A certified copy of a chattel mortgage which is admissible in evidence under the statutes and practice in Nebraska is admissible in the Federal Court held in Nebraska. (10) The declarations of an alleged agent are not admissible to prove the fact or extent of his agency.

It seems necessary to give some attention to the condition of the record. In the foregoing "Points to be Argued," counsel do not point to any specific or concrete action of the court to which these "Points to be Argued" are pertinent. Nor are we advised where in the record any rulings of the court are to be found which it is claimed in these points were erroneous, nor are we advised in what manner it is claimed the court erred. Proposition No. 1 would seem to have reference to the action of the lower court in incorporating the pleadings into the instructions given to the jury. But there is no exception to the instructions on this ground, and no complaint seems to have been made in the lower court with reference to the alleged action of the court in so doing. If we concede the correctness of the proposition in the abstract, it has no bearing on the issues presented.

Proposition No. 2 charges that the plaintiff was entitled to judgment on its petition for the unpaid balance of the purchase price as a matter of law, but here, again, no ruling of the court on this question is presented by the record. The only possible basis for the argument is that the court erred in denying plaintiff's motion for a directed verdict. But the motion for a directed verdict was not renewed at the close of all the evidence, and hence, it was waived. The overruling of a motion for a directed verdict is waived if the party making it afterwards introduces evidence in his own behalf. Concordia Fire Ins. Co. v. Commercial Bank, 8 Cir., 39 F.2d 826; Bank Sav. Life Ins. Co. v. Butler, 8 Cir., 38 F.2d 972; Bell v. Union Pacific R. Co., 8 Cir., 194 F. 366; White v. United States, 10 Cir., 48 F.2d 178.

The sufficiency of the evidence to sustain the judgment is therefore not open to review. The only errors that might be considered, providing properly presented by the record, are errors in the rulings of the court on the admissibility of evidence and errors in the instructions. Manifestly Nos. 1, 2, 3, 4, 5, 6, 7 and 8 of the foregoing "Points to be Argued," point out no adverse rulings of the court for our consideration. Neither do any of these points specifically refer to any alleged error of the court in giving or refusing instructions. They are for the most part a statement of abstract propositions of law. If the instructions are discussed in the brief, it is as an incident to a discussion of these abstract propositions of law. Rule 14 of this court provides, among other things, that the brief shall contain "a separate and particular statement of each assignment of error (in criminal and bankruptcy cases) or of each point relied upon (in civil cases) intended to be urged, *with the record page thereof*. When the error is as to the admission or rejection of evidence, the statement shall quote such evidence with the rulings thereon, *giving pages of the printed record where it occurs*. When the error is as to the instructions of the court, the statement shall quote the portion of the instructions or the requested instruction refused which is claimed as error, *giving pages of the printed record where it occurs.* * * *."

Rule 51 of the District Court rules provides that, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects *and the grounds of his objection.*"

This is a court of appellate jurisdiction and our function is limited to a review of alleged specific erroneous rulings of the lower court. Most of the argument in appellant's brief presupposes that the question of the sufficiency of the evidence to sustain the verdict is before us. But as before observed, we can not consider that question. If we turn to the statement of errors relied upon, it is found that the "Points to be Argued" are not bottomed on the statement of errors, nor does the statement of errors comply with the rules of this court. It contains no references to the pages in the printed record where the challenged action of the court may be found.

If we turn to the assignments which refer to the refusal to give certain requested instructions, we find that as to these requested instructions, the assignments state no grounds of objections or exceptions. We must decline to give any consideration to the ruling of the court declining to give these requested instructions.

Certain exceptions were saved to the instructions as given, and while the "Points to be Argued" make no specific reference to these exceptions, we are disposed to consider them. Exception was taken to that part of the court's instructions which advised the jury that in the sale of goods to be used by the buyer for a particular purpose, the law implies a warranty that the goods are suitable for the purpose intended. This was excepted to on the ground that there was no implied warranty pleaded and no issue made under the pleadings, and for the further reason that under the Nebraska statute there was no implied warranty of fitness of goods sold under a trade name, and that the goods were here so sold. In response to this objection, the court said: "Right there let me interpose a statement of the court on that exception. With reference to this particular exception concerning the trade name, the court is of the view that there is no evidence in this regard showing that the term 'Fatena' was such a trade name or term that was commonly known in the trade and such a trade name as is contemplated by the provisions of the statute."

It is now argued that a warranty was not implied because the merchandise was sold under its trade name, and Section 69-415 of the Compiled Statutes of Nebraska 1929, provides that: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." The Uniform Sales Act adopted by Nebraska provides in effect that where the buyer makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill and judgment, there is an implied warranty that the goods shall be reasonably fit for such purposes. We dealt with a similar contention in Davenport Ladder Co. v. Edward Hines Lumber Co., 8 Cir., 43 F.2d 63, 68, where it is said: " * * * where an article is desired for a particular pur-

pose and that purpose is known to the seller, and the buyer relies upon the seller to furnish him a suitable article, then a warranty of fitness will be implied, even though the article may have a well known and defined name or designation, or even though it be sold under a trade-name."

See, also: Hercules Powder Co. v. Rich, 8 Cir., 3 F.2d 12; Barrett Co. v. Panther Rubber Mfg. Co., 1 Cir., 24 F.2d 329; Giant Manufacturing Co. v. Yates American Mfg. Co., 8 Cir., 111 F.2d 360.

In Barrett Co. v. Panther Rubber Mfg. Co., supra, the Uniform Sales Act in force in Massachusetts was under consideration. The court said that the rule with reference to a known trade name did not apply where the article was sometimes called by a trade name or an ordinary name.

The defendant had had no experience with the use of this commercial hog feed. He ordered it for a particular purpose known to the seller, and there can be no doubt that he relied upon the seller to furnish him a suitable article. There is no evidence in the record that Fatena was known on the market and among those who are familiar with commercial feeds by that description, or that defendant had ever heard of Fatena before he made his purchase. The fact that the article had a trade name does not necessarily negative the existence of an implied warranty for fitness for a particular purpose when it is purchased not by name but for a particular purpose and supplied for that purpose. Davenport Ladder Co. v. Edward Hines Lumber Co., supra; Ireland v. Liggett Co., 243 Mass. 243, 137 N.E. 371; Wisdom v. Morris Hardware Co., 151 Wash. 86, 274 P. 1050. This is particularly true where the buyer, as here, relies not upon the trade name, but upon the seller's judgment. Even where articles are sold under a trade name, there is an implied warranty that they are fit for the ordinary purpose for which they are made. There was no error in giving this instruction.

Assignment No. 17 charges error in giving an instruction, but there are no grounds of objection or exception set out so that the matter was not called to the lower court's attention. We pass it without further comment.

In Assignment No. 18 objection is made to an instruction to the effect that if

the jury found from the evidence that R. M. Shay represented the plaintiff as a salesman and agent in the sale of its hog feed and that the contract for the sale in question was negotiated by him on behalf of the plaintiff with the assistance of other sub-agents, then it was immaterial whether the representations and promises made by Shay and his sub-agents were without the knowledge of plaintiff or not, because plaintiff had received the benefit of the transaction and by so doing had adopted the sale and was responsible for whatever representations were made to induce it. It stands without dispute in the evidence that Shay and his associates represented plaintiff in negotiating the sale of this hog feed. They were authorized to make such sale on behalf of plaintiff. That being true, plaintiff was bound by the statements and representations made by its representatives as a part of the negotiations of the sale even though these representations were fraudulent. Wullenwaber v. Dunigan, 33 Neb. 477, 50 N.W. 428; Jacobson v. Skinner Packing Co., 118 Neb. 711, 226 N.W. 321; Dresher v. Becker, 88 Neb. 619, 130 N.W. 275; Plate v. Detroit Fidelity & Surety Co., 229 Mich. 482, 201 N.W. 457; Simonds v. Cash, 136 Mich. 558, 99 N.W. 754; Bice v. Nelson, 105 Kan. 23, 180 P. 206, 181 P. 558; Light v. Jacobs, 183 Mass. 206, 66 N.E. 799; Edward Thompson Co. v. Schroeder, 131 Minn. 125, 154 N.W. 792.

It is elementary that acts of fraud committed by an agent in the course and scope of his employment are binding upon his principal even though the principal did not know of nor authorize the commission of the fraudulent acts. Janeczko v. Manheimer, 7 Cir., 77 F.2d 205; Shuttlefield v. Neil, 163 Iowa 470, 145 N.W. 1; Rush v. Leavitt, 99 Kan. 498, 162 P. 310; Moynes v. Applebaum, 218 Mich. 198, 187 N.W. 241. Here, the representations were made during the existence of the agency and in connection with the particular transaction which the agent was authorized to carry on. The instruction was therefore not prejudicial to plaintiff. But it is argued in this connection that the character of the representations made by plaintiff's agents were not such as to constitute actionable warranties, even if authorized. But the question of the sufficiency of the evidence is not presented by this record, and this is not one of the grounds of exceptions to any of the instructions.

Exception was taken to an instruction on the measure of damages to the effect that the measure of damages on defendant's counter-claim was the difference between the value of the goods at the time of delivery measured by their suitability for hog feed, and the value the goods would have had if they had been as represented or warranted. It is urged that this was erroneous because it advised the jury that the value to be determined was not the market value but the value measured by the suitability of the hog feed. We think the instruction as given is in accord with the applicable rule as established by the decisions of the Supreme Court of Nebraska. Oxygenator Co. v. Johnson, 99 Neb. 641, 157 N.W. 339; Young v. Filley, 19 Neb. 543, 26 N.W. 256; Cox v. Greenlease-Lied Motors, 134 Neb. 1, 277 N.W. 819. In the instant case, the action was based upon both fraudulent representations and breach of warranties. Counsel refers to the court's instruction as to special damages, but as no exception was saved to that instruction, the error, if any, is not available here.

Plaintiff excepted to the court's instruction to the effect that the defendant would not be entitled to recover on his counter-claim for damages occurring after he discovered the breach of promises or warranties, unless he were lulled into a sense of security by further promises, assurances and warranties of the plaintiff to continue the use of the hog feed, and that he continued such use relying upon such additional promises, representations and warranties. The only ground for the exception taken to this instruction was that: "Under the evidence in this case there is no evidence showing that any of the alleged representatives had any authority to so bind the company." We have already considered the question of the authority of these agents and the liability of the principal for their acts within the apparent scope of their authority. They were representing plaintiff in all the negotiations leading up to and growing out of the sale of this hog feed, and we are of the view that plaintiff was bound by all the representations, promises and warranties made by them, either in inducing the sale or in inducing

defendant to continue using the feed and hence not rescinding the sale.

During the cross-examination of the defendant, counsel for plaintiff offered in evidence a certified copy of a chattel mortgage purporting to have been executed by the defendant under date June 15, 1937 to H. Meierdierks, of Pender, Nebraska, mortgaging 220 mixed hogs. The court sustained an objection to it, expressing the view that the officer signing the certificate did not certify that he had the custody of the document. It was not primary evidence which tended to prove or disprove any issue in the case, but it is now claimed that it was admissible as going to the credibility of defendant. It was offered generally and not for the specific purpose of impeachment. Section 20-1279 of the Nebraska Compiled Statutes provides that: "Duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original records or papers so filed." The instrument gives the weight of the hogs as 200 pounds. The actual weight of the hogs when sold some two months subsequent to the date of this mortgage was established by the evidence without dispute at 153 pounds. This would tend to show that the defendant overestimated the weight of the hogs at the time he executed the mortgage, but this is a matter of no importance in this case. It does not tend to impeach or affect the credibility of the witness as to any pertinent testimony which he gave. Assuming that the exhibit if pertinent was admissible under District Court Rule 43, its exclusion was not prejudicial.

It is finally argued that the court erred in admitting testimony with reference to the authority or agency of the salesmen. It is true that agency can not ordinarily be proven by the declaration of the alleged agent. Where, however, a party is suing upon a contract made by such alleged agent, then his declarations may be received and whatever evidence has a tendency to prove agency is admissible. Circumstances including the relation of the parties to each other and their conduct with reference to the subject matter of the contract may be shown in proof of agency. Powerine Co. v. Grimm Stamp & Badge Co., 127 Neb. 165, 254 N.W. 722; Iowa Dairy Separator Co. v. Sanders, 40 Okl. 656, 140 P. 406. It stands without dispute that these individuals whose statements are objected to, conducted the negotiations for the sale of this hog feed, and on the sale effected through them the plaintiff delivered the property. This established their agency. Shay, one of the parties, was a territorial salesman for plaintiff, and in plaintiff's original complaint the party E. M. Young, one of the salesmen, is referred to as plaintiff's agent. The agency of these salesmen is abundantly established without reference to any declarations that may have been made by them on that subject. Their agency stands without dispute, but the question which counsel has seriously urged is the authority of such agents to bind the plaintiff by their representations. This question we have already determined adversely to plaintiff's contention. There was no prejudice in the rulings admitting this evidence as at most it was simply corroborative of other competent evidence.

No prejudicial error appearing from the record, the judgment appealed from is affirmed.