UNDERFEED STOKER COMPANY OF AMERICA, APPELLANT, V. FARMERS CO-OPERATIVE CREAMERY & SUPPLY COMPANY, APPELLEE.

FILED MAY 14, 1915. No. 18082.

1. **Sales: IMPLIED WARRANTY.** "Ordinarily where a manufacturer or dealer contracts to supply an article which he manufactures, or in which he deals, for a particular purpose, of which he is aware, under such circumstances that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is an implied warranty that the article supplied shall be reasonably fit for the purpose for which it is sold." *Toledo Computing Scale Co. v. Fredericksen*, 95 Neb. 689.

2. **Appeal: AFFIRMANCE.** "Where the verdict returned is clearly right and is the only one warranted by the evidence, the judgment will be affirmed, although errors may have intervened at the trial." *United States School-Furniture Co. v. School District*, 56 Neb. 645.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Montgomery, Hall & Young,* for appellant.

*Stout, Rose & Wells, contra.*

378        NEBRASKA REPORTS.        [Vol. 98

Underfeed Stoker Co. v. Farmers Co-operative Creamery & Supply Co.

FAWCETT, J.

This action was instituted by plaintiff in the district court for Douglas county, to recover the contract price claimed to be due from defendant under a written contract for the complete equipment of two 150 horse-power Kinney water tube boilers in defendants plant at Omaha, with "Jones underfeed mechanical stokers" and other accessories and attachments. Plaintiff is the manufacturer of the mechanical stokers referred to, and defendant is engaged in the manufacture of butter and ice cream. The answer admits the execution of the contract alleged in the petition, but alleges, among other things, that after the stokers were installed it was found that every attempt at practical use of them resulted in the filling of defendant's factory with smoke and soot to such an extent as to actually interfere with and prevent the making of butter and the operation of defendant's factory, all of which was open, obvious and well known to plaintiff and its engineer, or engineers, employed to install and test the same; that because of the premises defendant refused to accept or operate the stokers, and requested plaintiff to remove them; that plaintiff refused so to do, and in order to continue operation of its factory defendant was obliged to, and did, at its own cost remove the stokers from the boilers and install other equipment therein. For the expense of removal of the stokers and restoring the boilers to their original condition, defendant, by way of counterclaim, prayed judgment for $1,000. The reply denied all allegations in the answer and counterclaim, and specially alleged that, if smoke or soot accompanied the use of the stokers, the same was due to the fault or negligence of defendant in, or in connection with, the operation of the boilers and stokers. There was a trial to the court and jury, and a general verdict in favor of the defendant in the sum of $473.03. A motion for a new trial was overruled, and judgment entered upon the verdict, from which plaintiff appeals.

Several defenses, in addition to the one above set out, were interposed, litigated upon the trial, and are presented by the record in this court; but, for the reason to be here-

inafter stated, none of the questions presented and argued, except the one above noted, will be considered.

Plaintiff's brief contains 25 specific assignments of error, a number of which refer to the giving and refusal of instructions. Having reached the conclusion that the verdict is the only one which could properly have been returned, we do not deem it necessary to consider these assignments; nor do we deem it necessary to consider the assignments as to the rulings of the court in the admission or exclusion of evidence, as none of such rulings, if erroneous, is of such character as to be deemed material. The principal and controlling question involved in the case is the question of implied warranty by plaintiff that the stokers would be reasonably adaptable, suitable and fit for firing the boilers in defendant's butter and ice cream factory, for which they were sold; plaintiff knowing at the time of entering into the contract that the stokers which it was to manufacture and install were to be applied to this specific use. That plaintiff knew the use which the defendant intended to make of its boilers with the stoker attachment is beyond dispute. The evidence overwhelmingly shows that, when the stokers were used for the purpose of firing the boilers, the factory would become so filled with smoke and gas that it was hard for the employees to remain in the boiler room; that it was hard to get men to stay there; that some would stay a day only, and one or two remained only two or three hours, on account of the difficulties with the smoke and gas. Mr. Eldredge, vice-president of defendant, testified: "Q. How did this smoke affect your business in the factory? A. It simply put us out of business. We could not run that factory and run those stokers; that was an absolute impossibility. Q. What are the properties of butter in reference to its susceptibility to odors and smoke and gas? A. Probably one of the most susceptible products there is. Q. What do you say about ice cream? A. Same difficulty." He further testified that the smoke was so thick that it was almost impossible to keep a force in the office. The witness Fleming, who was sent by plaintiff to make a test of the boilers and stokers, sought to avoid this testi-

mony by designating what defendant's witnesses called "smoke" as "hopper gas." Call it what you will, it is well established that it was a serious detriment to defendant's business. The evidence also shows that, as soon as the stokers were taken out and hand-firing again resorted to, there was no further trouble from this smoke or gas. Nothing would be gained by further commenting on the evidence. The jury are well supported in finding that the use of the stokers. would have been destructive to defendant's business, and that they therefore were not adapted to the use to which plaintiff knew defendant intended to apply them. That defendant had a right to rely upon the implied warranty is well sustained by *Omaha Coal, Coke & Lime Co. v. Fay,* 37 Neb. 68; *Toledo Computing Scale Co. v. Fredericksen,* 95 Neb. 689; *Kellogg Bridge Co. v. Hamilton,* 110 U. S. 108; *Kennebrew v. Southern Automatic Electric Shock Machine Co.,* 106 Ala. 377; *Fitzmaurice v. Puterbaugh,* 17 Ind. App. 318; and numerous other cases cited in defendant's brief.

The record does not disclose any prejudicial error. Plaintiff appears to have had a fair trial. The judgment is fully sustained by the evidence, and is in harmony with well-settled principles of law. It is therefore

AFFIRMED.

SEDGWICK, J., not sitting.