PLYMOUTH CORDAGE COMPANY, APPELLANT, v. DAVID S. PHELPS ET AL., APPELLEES.

FILED DECEMBER 15, 1919. No. 20500.

1. **Sales: IMPLIED WARRANTY.** A manufacturer of goods, who prepares them to be sold, either through himself or through others, im-pliedly warrants that the goods sold are reasonably fit for the

Plymouth Cordage Co. v. Phelps.

purpose for which they are sold, and that they are free from any latent defect growing out of the process of manufacturing.

2. ———: LATENT DEFECT: EVIDENCE. Evidence examined, and *held* proper to be submitted to the jury as bearing upon the question whether the goods sold were possessed of a latent defect growing out of the process of manufacture.

APPEAL from the district court for Webster county: WILLIAM C. DORSEY, JUDGE. *Affirmed.*

*Burkett, Wilson & Brown* and *Fred Maurer,* for appellant.

*F. J. Munday, contra.*

ALDRICH, J.

Plaintiff brought this action at law to recover the purchase price of a carload of binding twine sold by it to the defendants in the year 1914. The verdict of the jury was for the defendants. The plaintiff brings this action on appeal. The contract of purchase was made by correspondence between the parties. The twine may be designated as Plymouth standard twine.

Plaintiff was the manufacturer of the twine. Defendants were merchants at Bladen, who handled the twine in distributing it to the farmers in the vincinity of this village. Total amount purchased by the defendants from the plaintiff was 25,000 pounds of what is know as Plymouth standard twine. Plaintiff claims that there is due him, for twine sold and delivered, from the defendants, and each of them, the sum of $1,875, and interest at 6 per cent. from October 1, 1915. The defendants in their answer make counterclaim for $5,000, alleging, among other things, in substance, that this twine in controversy was defective and worthless for the purpose for which it was purchased.

The principal issue in this case, and around which everything else centers, is: Was there an implied warranty as to the quality, grade, workmanship, and material furnished in making this twine?

104 Neb.—5

Plaintiff claims that the twine in question, which was purchased and used by defendants in 1915, was manufactured in the same way and was of the same quality and the same material as that made in 1914; the characteristics of standard twine, in substance, are its texture—500 feet to the pound—uniform strength, and a general quality that makes it insect proof; that no guaranty was ever made in that respect; while the record shows conclusively that the twine was eaten and gnawed by insects to the extent that a very large proportion of the grain went to pieces; in many instances as high as 18 bundles out of 20 would be unbound and the twine eaten off by insects.

These facts being proved by a clear, undisputed weight of evidence, the jury on the facts found for the defendants. The defendants take the position that there was an implied warranty in the purchase of this twine; that it was first-class quality and would perform and do the things for which it was purchased. The plaintiff knew the purpose for which the twine was to be used.

The court has recognized the doctrine of implied warranty, and in many cases has held that, where an article was worthless for the specific purpose for which it was bought, it has laid down the rule that there is an implied warranty that "the article supplied shall be reasonably fit for the purpose for which it is sold." *Toledo Computing Scale Co. v. Fredericksen,* 95 Neb. 689. The evidence upon the proposition is overwhelming that a large amount of the grain, when it came to be placed in stacks, was unbound, or the bundles became unbound immediately upon touching them; that the same twine, black in color, was different in quality from other standard twines used in binding grain.

The jury, then, on the evidence, rendered the only verdict it could render. This court has said: "Ordinarily where a manufacturer or dealer contracts to supply an article which he manufactures, or in which he deals, for a particular purpose, of which he is aware, under

such circumstances that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is an implied warranty that the article supplied shall be reasonably fit for the purpose for which it is sold." *Toledo Computing Scale Co. v. Fredericksen, supra.* It follows there must be an implied warranty.

It seems to be the general rule of this court that, in regard to implied warranty, the article sold is supposed to be generally expected to do the thing for which it is sold. This doctrine is reiterated in the case of *Underfeed Stoker Co. v. Farmers Co-operative Creamery & Supply Co.,* 98 Neb. 377. The same doctrine is again reiterated in *Oxygenator Co. v. Johnson,* 99 Neb. 643; and again in the case of *Hoe v. Sanborn,* 21 N. Y. 552, 78 Am. Dec. 163. The New York court announced back in 1860 in the matter of an implied warranty: "A manufacturer, who sells goods of his own manufacture, impliedly warrants that they are free from any latent defect growing out of the process of manufacture." This is substantially the same doctrine reiterated in *Toledo Computing Scale Co. v. Fredericksen, supra;* 24 R. C. L. 178, sec. 451; *Gerst v. Jones,* 32 Grat, (Va.) 518, 34 Am. Rep. 773.

It is recognized as a universal doctrine, founded on plainest principles of justice, that whenever an article sold has some latent defect which is known to the seller, but not to the purchaser, the former is liable for this defect if he fails to disclose his knowledge on the subject at the time of sale. It seems to be the general doctrine that, whenever a manufacturer of goods prepares his articles to be sold, either through himself, or through others, a warranty should be implied. In *Bluett v. Osborne,* 1 Stark. (Eng. C. Law)*384, Lord Ellenborough said: "A person who sells, impliedly warrants, that the thing sold shall answer the purpose for which it is sold." *Gray v. Cox,* 4 Barn. & Cr. (Eng.), *108. Best, C. J., reiterated the doctrine in *Jones v. Bright,* 5 Bing. (Eng.) 533, and it has been reiterated by many juris-

dictions in this country. The implied warranty is merely an obligation which the law imposes upon principles foreign to the actual contract, but which principles really are strictly analogous to the original contract.

Now the plaintiff claims that he sold to the defendants a twine known as "standard twine," and which was represented to be of certain qualities and characteristics. Granting this to be true, we do not understand that as a matter of law, or fair dealing, he could sell this kind of a standard twine and represent it to be of merchantable quality, and still have it turn out to be of no use for the purpose for which it was bought. Certainly there is an implied warranty that the article shall be of the kind and quality as represented. 35 Cyc. 403. See, also, *Loxtercamp v. Lininger Implement Co.*, 147 Ia. 29, where the principle is laid down: "Where a dealer undertakes to furnish an article to fill an order from one who buys for resale, or for any other known or specified use, or where there is an executory contract of sale of personalty not present for inspection and delivery, there is an implied warranty that the property is of merchantable quality, and, if a product of manufacture, that it is well made, of good material, and reasonably well fitted for the uses for which it is constructed."

It could not be told by the defendants whether these goods were free from any latent defect until they had been passed out, and then, for the first time, it would be discovered whether this twine in question was fit to bind grain or not, and on the overwhelming evidence it appears of record that it was worthless for the purpose for which it was bought. The rule is laid down that where any dealer undertakes to furnish an article to accomplish a specific purpose, and that is the consideration of the sale, there is an implied warranty that follows such sale, and calls upon the author of the promise to make good. The trial court adopted the rule of law as laid down in the *Lininger Implement Co.* case, *supra,* and submitted to the jury whether or not the

Plymouth Cordage Co. v. Phelps.

facts in the case created an implied warranty. Upon that issue of fact, and this case is largely one of fact rather than of law, the jury found its verdict for the defendants and against the plaintiff. There are other issues raised, but this one issue on the question of implied warranty is so overwhelming, and is so far reaching, that it permeates this entire case, and is really decisive of it.

There was some evidence by alleged experts as to there being no warranty against damages by grasshoppers and other insects. It was the theory of the plaintiff that the damage caused was by insects, and that there was no process of manufacture that prevented or tended to prevent the ravages of these grasshoppers and crickets. It would seem that, while these witnesses were men of unusual information, yet they had no knowledge as to the chemical qualities that entered into the manufacture of this twine. All that they seemed to. know was from observation. They had never made any study or analysis of the constituent elements that entered the making of the twine in question. And the weight of their testimony was a matter for the jury alone. The trial judge deemed the proposition as one of the theories of plaintiff's case and fairly submitted it to the jury for their consideration, for he plainly tells them that, "If from the evidence you find that the cutting of the twine by insects was through some cause which did not arise from any defect in the quality, texture or method of manufacture of the twine in question, * * * then you are instructed that the defendants are not entitled to recover anything upon the issue of a breach of warranty." There can be no question but what this instruction fairly submits the theory of the plaintiff, and on this fact the jury found for the defendants.

Hence, we conclude that under the facts and all the evidence and the law as applied the judgment of the district court should be affirmed.

AFFIRMED.

SEDGWICK, J., dissents.