## PLATE v. DETROIT FIDELITY & SURETY CO.

1. PRINCIPAL AND AGENT—EQUITY WILL NOT ASSIST PRINCIPAL WHO INSISTS ON PROFITING BY AGENT'S FRAUD.

Where one person is led to loss and another to profit by false representations inducing contract relations, and the fruit of the iniquity comes to headquarters, the court of equity is little apt to pay attention to mere intermediaries between the person wronged and the one who has profited thereby and insists on keeping the gain.[1]

2. CORPORATIONS—FALSE REPRESENTATIONS AS TO DIVIDENDS PAID CONSTITUTE FRAUD.

False representations by a solicitor employed by defendant's agent, inducing a sale of its corporate stock, that it had paid as high as 40 per cent. dividends per year upon its common stock, when in fact it had not been operating

[1]Agency, 2 C. J. § 145 (1926 Anno).
On liability of corporation for fraud or forgery of its officers in the issue of stock, see notes in 19 L. R. A. 331; 41 L. R. A. (N. S.) 187.

long enough to pay a dividend, *held*, sufficient to justify cancellation of the contract on the ground of fraud.[2]

3. SAME—NOTICE OF FRAUD IMMATERIAL WHERE PRINCIPAL INSISTS ON KEEPING PROFITS AFTER KNOWLEDGE THEREOF.

It cannot be said that defendant's hands are clean because it knew nothing of the fraud at the time, where it was advised thereof soon after, and took the position that it was a matter of no concern to it, but one between the solicitor and his victim, and insisted on keeping the proceeds.[3]

4. SAME—FRAUD—CONTRACT INDUCED BY FRAUD IS VOID NOTWITHSTANDING PROVISION THAT IT CONTAINS ENTIRE AGREEMENT.

Fraudulent representations inducing a contract for the purchase of corporate stock will avoid it notwithstanding a provision therein that it is not subject to countermand, that no representation either written or verbal other than those in the contract shall be binding on the company, and that it contains the entire contract between the purchaser and the company.[4]

5. EVIDENCE—ORAL TESTIMONY ADMISSIBLE TO SHOW CONTRACT INDUCED BY FRAUD.

The rule that oral testimony is not admissible to vary the terms of a written contract is not applicable where cancellation of the contract is sought on the ground that it was induced by fraudulent representations.[5]

6. CANCELLATION OF INSTRUMENTS—AGENT'S FRAUDULENT INDUCEMENTS MAY BE SHOWN ALTHOUGH HE COULD NOT CHANGE TERMS OF CONTRACT.

In a suit against a corporation for the cancellation of a contract for the purchase of its corporate stock induced by the fraud and deceit of the solicitor, the defense that plaintiff had notice that the solicitor had no authority to make any other representations than those contained in the contract by reason of a provision therein that it contained all of the agreement and that plaintiff's remedy, if any, was against the solicitor, *held*, not available, although it would be good as against the subject-matter of the contract.[6]

7. SAME—LACHES—TIME ALONE DOES NOT CONSTITUTE LACHES.

Delay in instituting a suit for the cancellation of contract

[2]Corporations, 14 C. J. §§ 865, 877; [3]Id., 14 C. J. § 888; [4]Id., 14 C. J. § 886 (1926 Anno); [5]Evidence, 22 C. J. § 1623; Cancellation of Instruments, 9 C. J. § 194; [6]Cancellation of Instruments, 9 C. J. § 32 (1926 Anno).

on the ground of fraud occasioned by efforts of plaintiff to reach an amicable settlement, *held*, not to constitute laches, since time alone, under the circumstances, is of slight significance.[7]

8. CORPORATIONS—ESTOPPEL—EXECUTING VOTING PROXY DOES NOT CONSTITUTE ESTOPPEL.

The execution by plaintiff of a voting proxy at defendant's request during the time she was trying to reach an amicable settlement with defendant, *held*, not to estop her from rescinding the contract for the purchase of the stock, where the rights of neither party were affected thereby.[8]

9. SAME—COMMISSION PAID BY DEFENDANT FOR VOID SALE TO PLAINTIFF MAY NOT BE DEDUCTED ON CANCELLATION OF CONTRACT.

Plaintiff is entitled to the return of all the money she paid on a contract for the purchase of defendant's corporate stock induced by the solicitor's fraud and deceit, on its cancellation, notwithstanding defendant paid a commission for its sale.[9]

10. SAME—TENDER.

Cancellation of the contract left nothing in plaintiff's hands to return to defendant but her copy thereof, and a receipt for the money paid, and therefore her failure to return these would not prevent her from obtaining her rights.[10]

Appeal from Lenawee; La Joie (Ernest P.), J., presiding. Submitted October 15, 1924. (Docket No. 91.) Decided December 31, 1924.

Bill by Carrie E. Plate against the Detroit Fidelity & Surety Company for the cancellation of a stock subscription on the ground of fraud in its procurement. From a decree for plaintiff, defendant appeals. Affirmed.

*Baldwin & Alexander*, for plaintiff.

*Sheridan F. Master*, for defendant.

WIEST, J.    This is a bill to require defendant to

---

[7]Cancellation of Instruments, 9 C. J. §§ 81, 84 (1926 Anno); Corporations, 14 C. J. § 868; [8]Corporations, 14 C. J. § 867; [9]Id., 14 C. J. § 866; [10]Id., 14 C. J. § 869.

surrender for cancellation plaintiff's subscription for 50 shares of its capital stock, return $1,250 paid thereon and two notes, each for $1,875.   Defendant employed Walter W. Tait to sell its capital stock, and Mr. Tait employed B. O. Scott to solicit subscriptions. Mr. Scott visited plaintiff and represented to her that the company was making profits to the extent it had paid as high as 40 per cent. in dividends per year upon its common stock, and that dividends of from 5 to 6 per cent. would be paid each quarter of a year, and if she would purchase common stock at $100 per share and pay one-quarter down the dividends would pay the rest in from three to four years and take care of her notes for the other three-quarters.   Believing this, she subscribed for 50 shares, paid $1,250 and gave two notes, each for $1,875.   Learning the representations were false, she filed this bill, after making efforts to obtain relief without suit.   Defendant admits the employment of Mr. Tait, but denies any authority on the part of Mr. Scott to represent it, except to give receipt in its name for moneys paid on subscriptions; acknowledges receipt of the money paid and the receipt and acceptance of the subscription contract, including the two notes; sets up laches and acts constituting estoppel; avers payment of a commission of $875 on the subscription to Mr. Tait, and insists plaintiff is without remedy.

There is a rule of common honesty which should run with the dealings of men, and this requires that the truth be told, and when this is not done and one person is led to loss and another to profit by false representations inducing contract relations, and the fruit of the iniquity comes to headquarters, the court of equity is little apt to pay attention to mere intermediaries between the person wronged and the one who has profited thereby and insists on keeping the gain.   Of course, we recognize the difference between claimed relation of past facts and mere prophecy of what is to come.

Whether necessary or not under the authorities, we strip this case to the bone and plant decision upon the bald statement made by Mr. Scott that the company had paid as high as 40 per cent. dividends per year upon its common stock. This representation was false. Defendant company is a reorganization of an old company with another name, and at the time of the representation made by Scott had not been operating long enough to pay a dividend. Such a statement about dividends paid would be quite likely to induce a purchase of stock, and we are satisfied it was a moving cause in obtaining plaintiff's subscription, money and notes.

We recognize no point where the fraud in so obtaining plaintiff's money and notes left the transaction and let the avails come clean into defendant's hands. We do not say defendant knew anything about the fraud committed by Mr. Scott, for we entertain the opinion it was not aware thereof at the time Mr. Scott's gleanings were turned in, but it was advised soon afterwards and should then have quickly taken the position it would stand for no such dealing in its behalf, instead of insisting it was a matter of no concern to it but one between the solicitor and his victim.

Defendant contends that plaintiff cannot be heard to say there were representations made inconsistent with or in addition to the written contract, because the subscription writing signed contained these provisions:

"This subscription is not subject to countermand and no conditions, agreements or representations either written or verbal, other than those printed herein, shall be binding on said company. * * * This subscription contains the entire contract between the subscriber and the company."

The seal of silence as to actual fraud is not imposed by any such provisions. It is elementary that fraudulent representations inducing a contract will void it.

Plaintiff does not seek to vary the terms of the contract, but claims the contract is void because she was induced to execute it by false and fraudulent representations made by Mr. Scott.   It has long been settled that such provisions in a contract do not prevent showing the contract is void by reason of false and fraudulent representations in its procurement.   *Peck* v. *Jenison,* 99 Mich. 326; *J. B. Millet Co.* v. *Andrews,* 175 Mich. 350; *J. B. Colt Co.* v. *Reade,* 221 Mich. 92.

Defendant takes the position that, under the provisions of the contract, plaintiff was expressly notified that Mr. Scott had no authority to make any representations not therein contained, and if he did so and plaintiff relied thereon her remedy is against Mr. Scott and not defendant.   This is good law with reference to the subject-matter of the contract, but is not the law with reference to fraud and deceit inducing the making of the contract.

We are not impressed with defendant's claim of laches on the part of plaintiff.  ·  Time alone is of slight significance and when it appears, as it does here, that the delay was occasioned by efforts to reach an amicable adjustment, with offers and counter offers, the time so taken and the efforts so made cannot be counted as a time of sleeping on rights or an intention to forego remedy.

Defendant sent plaintiff a voting proxy to sign and she executed it and it was used at a stockholders' meeting, and this is urged as an act working an estoppel to claim fraud.   This happened during the time the parties were trying to reach an adjustment, and neither ended their efforts nor cut plaintiff off from her right to appeal to the court for relief from the fraud if she failed to get relief from defendant. Defendant was not led by the giving of the proxy to any action it would not otherwise have taken.   Plaintiff lost nothing by acceding to the request and defendant gained nothing thereby, for it left the parties

with the controversy pending and negotiations continuing.

Defendant also claims it was led by plaintiff's subscription contract to pay its sales agent a commission amounting to $875 and it ought not to be required to refund plaintiff's payment without this deduction. The commission so paid was upon a contract vitiated by fraud. We may accept the good faith of defendant in paying the commission and of Mr. Tait in receiving the same, and yet have no reason for making plaintiff stand the loss. We hold the subscription contract void for fraud, and this sends the rights of plaintiff back to the time of paying the money and executing the notes, and she is entitled to a return of all she gave and a cancellation of the subscription contract. Such cancellation will leave nothing in plaintiff's hands to be returned to defendant. It would have been an idle ceremony to have delivered to defendant the receipt she held and the copy of the contract, and her failure to do so does not stand in the way of obtaining her rights.

The decree in the circuit is affirmed, with costs to plaintiff.

CLARK, C. J., and MCDONALD, SHARPE, STEERE, and FELLOWS, JJ., concurred. BIRD and MOORE, JJ., did not sit.