COLBY v. PLYMOUTH ROAD DEVELOPMENT CO.

1. VENDOR AND PURCHASER—DEFECTIVE TITLE—RESCISSION.
   Rule that purchaser intending to seek rescission of contract for defect of title must do so promptly after discovery of defect is subject to exceptions.

On right of vendee to recover purchase money paid because of defects in title, where defects have been waived by him, see annotation in 51 A. L. R. 251.

2. SAME—WAIVER—LAPSE OF TIME ALONE NOT DECISIVE OF WAIVER.
   While right of purchaser to rescind for defect of title may be
   waived by acts showing affirmance, or by inexcusable delay
   after discovery of defect, lapse of time alone is not decisive
   of waiver.

3. SAME—WAIVER NOT SHOWN.
   Where evidence shows that purchasers were unaware of nature
   of easement on land purchased until shortly before commenc-
   ing suit to rescind contract of purchase for defect of title, it
   cannot be said that said defect was waived.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted June 17, 1930. (Docket No. 96, Calendar No.
35,080.) Decided October 3, 1930.

Bill by Howard H. Colby and another against
Plymouth Road Development Corporation, a Vir-
ginia corporation, for rescission of a land contract
and recovery of sums paid thereunder. From de-
cree for plaintiffs, defendant appeals. Affirmed.

*Monaghan, Crowley, Reilley & Kellogg,* for plain-
tiffs.

*Goodenough, Voorhies, Long & Ryan* (*William L.
Carpenter,* of counsel), for defendant.

SHARPE, J. On March 25, 1925, a written contract
was entered into between the plaintiffs and the de-
fendant whereby the defendant agreed to sell to the
plaintiffs 80 acres of land in the township of Livonia,
in Wayne county, for the sum of $88,000, of which
$17,600 was then paid and the balance payable $8,800
each year thereafter. The vendees were given pos-
session and entitled thereto until default. On re-
ceiving payment in full, the vendor agreed to convey
by warranty deed, free and clear of all liens and
incumbrances.

Before the execution of the contract, the defendant delivered to plaintiffs an abstract of title to the property. It disclosed that a former owner had, in 1913, conveyed to the Imperial Oil Company, a Canadian corporation, a right of way for pipe lines and telegraph or telephone poles over this and other lands. Plaintiffs thereupon informed defendant's agent that they were not interested in purchasing the property with this easement upon it. He took the matter up with some of defendant's officials, and later informed plaintiffs that the easement was nonexistent; that it was an old oil lease, and could be removed from the chain of title. The defendant had purchased with knowledge of the easement, but had secured a warranty deed therefor. After assurances that defendant would guarantee the removal of the easement and of its willingness to covenant for a clear title, the contract was entered into. There was nothing upon the land at that time to indicate the existence of a pipe line thereon. Some time later the defendant submitted to plaintiffs an agreement limiting the easement to a strip 20 feet in width along the course of the pipe line, without indicating its location. After some delay, plaintiffs declined to execute it.

The pipe line is used for transporting oil from northern Ohio to Port Huron, and thence into Ontario. Its general course is somewhat east of north. The plats of several subdivisions in Wayne county through which the pipe line passes having been approved of by the board of county auditors without the consent of the pipe line company, it filed a bill in the Federal court at Detroit, praying that its rights be defined, and secured a decree in February, 1929, against the board of county auditors and the owners of several subdivisions, fixing its

easement at a strip of land 20 feet in width along the course of its pipe line. On July 24, 1925, the board of county auditors adopted a resolution establishing a highway 120 feet in width along the line of the pipe-line right of way.

On April 19, 1929, plaintiffs for the first time discovered the actual existence and location of the pipe line on their land. They had made payments on the contract on account of principal and interest and taxes, the last being a payment of taxes on January 5, 1929.

Negotiations for a settlement proving unavailing, plaintiffs filed the bill of complaint herein, praying for a rescission of the contract, a decree for the repayment of all sums paid thereon, and that the amount so decreed be declared a lien upon the property. A hearing was had in open court, after which a decree was entered as prayed for, fixing the amount due plaintiffs at the sum of $57,600.52, and declaring the same to be a lien upon the property, and providing for foreclosure thereof. The defendant has appealed.

Counsel for defendant frankly admit "that the easement is an incumbrance and that plaintiff, if entitled to a decree for rescission, is entitled to a lien upon the land." They admit defendant's liability for a breach of the warranty. They insist that:

"The only question here is whether plaintiffs are not now restricted to a remedy based upon the affirmance of the contract."

That its title was incumbered was called to the attention of the defendant at the time it entered into the contract of sale. It was its duty, and not plaintiffs', to at once investigate the nature of the oil company's easement, and, had it done so and discovered,

as it now has, that it cannot comply with the terms of its contract, it should have so advised plaintiffs and negotiated a settlement if possible. There would at that time have been no such decrease in the value of the land as there was at the time of the hearing.

The proofs do not justify a finding that plaintiffs knew that this land might not be relieved from the pipe-line easement until they discovered its location thereon on April 19, 1929. The bill was filed on July 12th following. It cannot be well said that this delay worked any hardship or caused any loss to the defendant.

The rule that one who intends to seek rescission of a contract for defect of title must do so promptly after discovery of the reasons therefor is well established; but is subject to exceptions. *La Force* v. *Caspian Realty Co.*, 242 Mich. 646. While the right to rescind may be waived by acts showing an affirmance, or by inexcusable delay after the reasons therefor have become apparent to the vendee, the lapse of time is not alone decisive of the waiver of such a right. *Plate* v. *Detroit Fidelity & Surety Co.*, 229 Mich. 482. It must appear from the testimony that, notwithstanding the defect, the vendee was content to take such title as the vendor had and accept such a reduction in the purchase price as would compensate him for the loss due thereto.

While the testimony bearing upon the conduct of the plaintiffs is conflicting, we are satisfied, after a careful consideration of it, that they were unaware of the nature of the oil company's easement, and of the inability of the defendant to remove it, until shortly before the bill of complaint was filed. We have not overlooked the testimony of Mr. Scupholm that the plaintiff Costello said to him in Sep-

tember, 1926, that the defect would enable them to secure a reduction in the purchase price. While we do not find denial of this conversation on the part of Mr. Costello, his letters thereafter written to defendant's attorneys quite clearly show that he did not at that time understand the nature of the easement, or that it could not be removed. On April 17, 1928, he writes, proposing that the plaintiffs make payment of 50 per cent. of the total purchase price, accept a deed and execute a purchase money mortgage for the balance. In this letter he says:

"I know the title was somewhat clouded by the right of way owned by the Imperial Pipe Line Company, but I do not know what progress has been made in clearing up this matter in the recent past. Before closing the deal, I would like to have an opportunity to have the abstract, which is in your possession, certified and examined."

To this defendant's attorney replied:

"I am informed that the pipe line matter is soon to be adjusted in the following way:

"A decree is to be entered in the suit in the Federal court, fixing the location of the pipe line, and contracts are to be submitted to the various owners whereby the pipe line is to be maintained in its present location with about 20 feet of ground reserved which ultimately will be the center of a boulevard which the Wayne county auditors insist should be laid along the pipe line."

To this letter Mr. Costello replied on May 2, 1928:

"I received your letter of April 26th, regarding the above matter, and I was particularly interested in what you had to say about the pipe line matter. I was surprised to learn that a suit has been commenced in Federal court, the object of which was to fix the location of the pipe line over the different properties.

"I made a search for the file in Federal court, but was unable to find the same. If you have the information, I would thank you to give me the file number and the title of the case. Possibly the relocation of the pipe lines will miss our property entirely, thereby clearing up the defect in the title."

The decree is affirmed, with costs to appellees.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.