ROBINSON v. GREAT LAKES COLLEGE, INC.

1. EVIDENCE—PAROL EVIDENCE RULE—FRAUDULENT REPRESENTATIONS AS TO EXISTING FACTS INDUCING EXECUTION OF INSTRUMENT— GIFT TO COLLEGE.

In grantor's suit to cancel a deed and for reconveyance of real estate given defendant incorporated college by grantor on the ground of fraud, evidence of fraudulent representations as to the college and ability to erect proposed building made before and inducing execution of the deed was admissible as such testimony was not within the parol evidence rule.

2. SAME—PAROL EVIDENCE—FRAUD INDUCING EXECUTION OF CONTRACT.

Testimony of fraudulent representations as to existing facts, inducing execution of a contract, is not within the parol evidence rule and is admissible in evidence as bearing upon the question of whether a contract, fair on its face, was procured by fraud.

Fraud in making gifts of land, see Restatement, Restitution, §§ 8, 26, 39; 3 Restatement, Torts, § 553.

As to unrealized expectations—anticipated acceptance of offer, see Restatement, Restitution, § 56.

As to wrongful acquisition of title, see Restatement, Restitution, § 130.

Admissibility of parol evidence to prove that a contract is void or voidable for fraud, see 1 Restatement, Contracts, § 238.

3. APPEAL AND ERROR—CHANCERY APPEALS HEARD DE NOVO.
   Chancery appeals are heard *de novo*.

4. SAME—CHANCERY APPEAL—FINDINGS OF TRIAL COURT.
   While in a chancery appeal the findings and decree of the trial
   court do not have the effect of a judgment of a suit at law, the
   trial judge does have the benefit of seeing and hearing the wit-
   nesses and where there is a sharp dispute of fact the Supreme
   Court is inclined to attach a certain importance to his con-
   clusions.

5. DEEDS—CANCELLATION—FRAUD—EVIDENCE.
   In suit by grantor of valuable real estate to an incorporated col-
   lege to cancel deed and for reconveyance to 82-year old donor
   thereof for use as college campus, evidence that president of
   defendant and others made fraudulent representations that col-
   lege had sufficient funds with which to start construction of
   building on the land and that it would be started within a cer-
   tain time *held*, sufficient to establish case by a preponderance
   of the evidence.

Appeal from Oakland; Holland (H. Russel), J.
Submitted April 4, 1940. (Docket No. 49, Calendar
No. 40,993.) Decided June 19, 1940.

Bill by Anna E. Robinson against Great Lakes
College, Incorporated, a Michigan corporation, to
have a deed decreed null and void and to quiet title.
Decree for plaintiff. Defendant appeals. Affirmed.

*Wiley, Streeter & Ford,* for plaintiff.

*George F. Maxwell* and *Benedict H. Lee,* for de-
fendant.

McALLISTER, J. Plaintiff filed a bill in equity to
rescind and cancel a deed and for reconveyance of
real estate on the ground of fraud. The trial court
entered a decree granting the relief sought, and de-
fendant appeals.

The issue is largely one of fact. Plaintiff, Anna
E. Robinson, was the owner of 120 acres of land situ-
ated at the southwestern corner of Nine Mile road

and Wyoming avenue in the village of Oak Park in Oakland county. At the time of the transaction in question the property had an assessed value of $35,000; plaintiff figured that there were unpaid taxes against the property of about $15,000, but in fact such taxes with interest and penalties amounted to $20,014.92. In addition, there were further tax incumbrances in drain taxes against the property, but there was some question about the validity of such taxes because of a court decision.

Dr. Clayton J. Ettinger, the president of the defendant college, had filed articles of incorporation for the National Academy of Science and Human Relations, Inc., in January, 1936; later the name was changed to the North Central College, Inc.; and afterward, in May, 1938, the name was again changed to the Great Lakes College, Inc., its present name. When it was first incorporated, the articles showed assets in real estate of $5,000, with Dr. Ettinger the owner of 98 shares, Anna Ettinger the owner of one share, and Glen L. Ettinger the owner of one share. The college opened on October 11, 1937, occupying quarters on the second floor of a business and office building in Ferndale, with an affiliation with the School of Music, an institution in Ferndale, and with a contract arrangement for the use of the physical, chemical, and biological laboratories with the Ferndale High School. These were used by the college at night and on Saturdays.

In 1938 Dr. Ettinger was investigating the opportunities for expansion and better accommodations. His attention was directed to the property owned by plaintiff; and during the first part of April, 1938, he called on Miss Robinson to discuss possibilities of securing the land. There followed a number of interviews, in the course of which Dr. Ettinger explained about the school and his ideas

on education. He had previously prepared an "atlas," setting forth the philosophy of the school, and charts showing comparative attendance at various colleges. These he produced for the information of Miss Robinson, together with architectural prints showing views of a proposed unit of buildings of the new college, and a design of one of the buildings, as well as an idealized plan for a campus to be located on a site of approximately 120 acres. He also presented to her a catalogue of the new college.

Miss Robinson was deeply interested in the use of the property as a memorial to her family. She had previously bought the interest of one of her brothers in the land with the hope of using it for such a memorial. Washington I. Robinson, a brother of plaintiff, now deceased, had been the previous owner, and, some years before, had offered the land to the village of Oak Park as a gift to be used for general public purposes. In the first discussions, Dr. Ettinger suggested an offer of $5,000 for the purchase of the property. Plaintiff says that she asked $10,000 for the land and stated that it would be satisfactory if the college would pay $1,000 a year for 10 years. However, as the discussions proceeded, she came to the conclusion that, instead of there being only $12,000 or $15,000 in taxes against the property, there was in excess of $70,000 in tax claims. At first, she stated, she had thought that the drain taxes were "illegal." Whether they were valid or not, it was plaintiff's impression that at the time of the transaction in question, such taxes were incumbrances against her property.

The result of the negotiations was that, upon the agreement of defendant that the college would designate its campus as "Robinson Campus," as a memorial to her brother, Washington I. Robinson, and would also place a plaque in his memory in the main

building, plaintiff conveyed the real estate in question to defendant as a gift.

Plaintiff, however, contends that she was persuaded to make such conveyance because of fraudulent misrepresentations of fact. She claims that the statements with regard to the school were false; and she further insists that it was fraudulently represented to her that the college had sufficient funds to begin the erection of a $300,000 school building, which was to be commenced before September, 1938; that upon discovery of such misrepresentations, she demanded reconveyance and, failing to secure the same, filed her bill to set aside the deed.

At the outset defendant claims that any testimony as to representations made to plaintiff prior to the execution of the deed and contract is inadmissible, because all such statements were merged in the written instruments. But where the inducements for the execution of a contract are fraudulent representations as to existing facts, testimony as to such representations is not within the parol evidence rule. They do not vary, change, or alter the terms of the written contract and are admissible in evidence, as bearing upon the question of whether a contract, fair on its face, was procured by fraud. *Plate* v. *Detroit Fidelity & Surety Co.,* 229 Mich. 482; *Delta Asbestos Co., Inc.,* v. *Sanders,* 259 Mich. 317. Plaintiff testified that upon the occasion of several interviews with Dr. Ettinger, he was accompanied by Charles D. Gibbons, who appears to have taken an interest in the development of the college; that Dr. Ettinger showed her the catalogue of the college and also left with her an account from a newspaper with regard to the proposed construction of the college building, including a picture of the building. She claimed that Dr. Ettinger and Mr. Gibbons talked continually

about having the building up, so that the school could start in September; that they had men waiting to commence work, and that they would start the building as soon as they had the land; that they said that the reason why they were in such a hurry was that they had the men ready to start work as soon as they could get the deed; that they said: "We must have the deeds right away, if we had the deeds we could commence right away;" that the building would cost about $300,000. She further testified that she was advised that they had enough financial backing to start the project. Among the foregoing representations, which plaintiff states were made to her, certain of them are claimed to have been made by Mr. Gibbons, but in the presence of Dr. Ettinger.

In certain of the discussions which plaintiff had with Dr. Ettinger and Mr. Gibbons, Lizzie J. McSweeney, an attorney and friend of plaintiff, was present. Miss McSweeney testified that about July 21, 1938, the two men were present at a meeting and showed plans and specifications of a beautiful building; that Dr. Ettinger told her that it was to cost $300,000; and that "they could finance the first unit, and they wanted that ready by the 1st of September to occupy for school purposes;" that Mr. Gibbons, in the presence of Dr. Ettinger, stated that "they had to have the deeds immediately and as soon as the deeds were executed they were going to break ground immediately to start the college, so they would have the first unit ready by the 1st of September for the occupancy by the school."

With regard to the newspaper account which Dr. Ettinger had previously left with plaintiff, it was therein stated that a group of persons had been present at a meeting to discuss plans for the college, "including a $300,000 liberal arts building, which,

according to plans, will be constructed before October 1st.'' The date of the newspaper was May 19, 1938.

On November 15, 1938, plaintiff, through her attorneys, wrote to defendant stating that the college building had not been commenced, and asked for information relative to contracts that had been let, and the amount of funds on hand to carry out the development. The plaintiff's attorneys also advised defendant that they had been unable to discover that the college had any assets with which to erect such a building. Receiving no answer to this letter, on November 22, 1938, the attorneys for plaintiff gave notice that their client was rescinding and asked for a quitclaim deed. Upon refusal by the defendant to comply with such request, plaintiff, on December 9, 1938, filed her bill of complaint.

Plaintiff's testimony, as well as that of Miss McSweeney, was contradicted by Dr. Ettinger and Mr. Gibbons. Dr. Ettinger was practically the sole owner of the college. He made strenuous efforts to have various of the taxes cancelled by public authorities between the time the college received the deed and the time plaintiff took steps to rescind, and in several instances he was successful. The case in its essentials is a dispute of fact.

Chancery appeals are heard *de novo*. While the findings and decree of the trial court do not have the effect of a judgment of a suit at law, we are impressed with the fact that the trial judge had the benefit of seeing and hearing the witnesses; and in a case where there is such sharp dispute of fact, we are inclined to attach a certain importance to his conclusions. In this case, moreover, plaintiff was receiving nothing whatever for the conveyance of her property except an agreement that in the college building there would be a memorial to her brother

and that the campus would bear his name. She was a woman 82 years old, and while there is no claim that an imposition was practiced upon her because of her advanced years, it is a plausible conclusion that she was influenced, in conveying the land, by the consideration of promptness and dispatch in having such a memorial constructed. The consideration of time might not have the same urgency in the case of a younger person. Furthermore, there is the cogent circumstance that the newspaper account about the college, which was given to plaintiff by Dr. Ettinger, gave special prominence to the statement that the college building, costing $300,000, "according to plans, will be constructed before October 1st." These facts, together with other testimony sustaining her claim, are persuasive. We are of the opinion that she established her case by the preponderance of the evidence.

While there are some inconsistencies and contradictions in certain of the testimony of the plaintiff, they are not of such nature or importance as vitiate her credibility or render her claims improbable. We have not discussed the many questions argued regarding the status of the college and the representations made concerning its character and functioning, as the disposition of the foregoing issue makes it unnecessary to our determination.

On a review of the record, the decree of the trial court is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.